CITY FEDERAL SAVINGS AND LOAN
ASSOCIATION, Plaintiff,

v.

Robert P. CROWLEY, Sr., et al.,
Defendants.

Civ. A. No. 72–C–501.

United States District Court,
E. D. Wisconsin.

April 24, 1975.

L. C. Hammond, Jr., W. S. Parsons, and Ross R. Kinney, Milwaukee, Wis., for plaintiff.

Robert J. Loots, Clay R. Williams, and Edward A. Porter, Milwaukee, Wis., for defendants Robert P. Crowley, Sr., and Mary D. Crowley.

Gregory Gramling, Jr., Milwaukee, Wis., for defendants Robert P. Crowley, Jr., Patricia Crowley, David B. Crowley, Paul V. Crowley, Judith Crowley, and Crowley Corp.

Bernard F. Mathiowetz, Milwaukee, Wis., for R & M Corp., Benjamin V. Dela-Hunt, James W. Goggin, Sr., and Joseph R. Vallier.

David E. Beckwith and Robert A. Christensen, Milwaukee, Wis., for defendant Savings Ass'n Retirement Fund.

No appearance for defendant Fidelity and Deposit Co. of Maryland.

## DECISION AND ORDER

REYNOLDS, Chief Judge.

This is an action by plaintiff City Federal Savings and Loan Association ("City") in which it is alleged that several of its former officers and directors committed numerous acts of mismanagement and self-dealing over an extended period of time. The complaint contains fifteen separate claims and seeks damages, injunctive relief, and a declaratory judgment. The heart of the complaint is that during the period between January 1, 1954 and February 20, 1971, the defendant officers and directors breached their fiduciary duties to City by usurping various corporate opportunities, receiving excessive compensation, and causing City to make payments for their personal benefit. These actions are alleged to be violative of regulations promulgated by the Federal Home Loan Bank Board and of the federal common law governing the internal management of federal savings and loan associations.

Plaintiff City is a federal savings and loan association organized and existing under § 5 of the Home Owners' Loan Act of 1933, as amended, 12 U.S.C. § 1464(a). City's office and place of business is located at 600 West Wisconsin Avenue, Milwaukee, Wisconsin.

Defendant Robert P. Crowley, Sr., ("Robert Sr.") was the president, managing officer, and a director of City until February 20, 1971. His wife, Mary D. Crowley ("Mary"), was a director of City until August 1968. Their son, Robert P. Crowley, Jr., ("Robert Jr.") was secretary-treasurer of City from January 1955 through February 1971, and a director of City from August 1968 to September 1971. David V. Crowley ("David"), Robert Jr.'s brother, was assistant secretary-treasurer from April 1960 to February 1971. Paul V. Crowley ("Paul"), a third son, was assistant secretary-treasurer from August 1961 to August 1966 and also from January

1968 to November 1969. Patricia Crowley ("Patricia") is Robert Jr.'s wife. Judith Crowley ("Judith") is David's wife.

Defendants R & M Corporation and Crowley Corporation are Wisconsin corporations which were owned and controlled by members of the Crowley family. R & M Corporation engaged in the business of appraising real property being mortgaged to City. Crowley Corporation engaged in the business of inspecting the progress of construction of improvements to real property mortgaged to City, selling hazard insurance policies covering real property mortgaged to City, and to a limited extent, appraising real property being mortgaged to City.

Defendants Dela-Hunt, Goggin, and Vallier were directors of City at times material to the complaint.

Defendant Savings Association Retirement Fund ("SARF") is a multi-employer, nonprofit pension trust through which City provided retirement and other benefits for its employees. Defendant John E. Stipp ("Stipp"), a trustee of SARF, is named as a defendant only in that capacity.

Defendant Fidelity and Deposit Company of Maryland ("Fidelity") is a Maryland corporation authorized to engage in the business of writing surety bonds in Wisconsin and elsewhere.

The complaint alleges that until February 20, 1971, the Crowley family controlled City by soliciting continuous proxies from member borrowers and depositors running to themselves or persons designated by them, voting such proxies for themselves or persons designated by them as directors, and as directors electing themselves officers of City.

The original complaint contains fifteen distinct claims against the several defendants. Claim I alleges that from January 1, 1955 through February 1971, the directors wasted City's assets, in violation of their fiduciary duties to City and its members, by paying Robert Sr., Robert Jr., and David salaries and bonuses which, in some instances, lacked any consideration and consistently exceeded the reasonable value of the services rendered. City demands an accounting by Robert Sr., Robert Jr., and David to determine the amount that the salaries and bonuses were excessive, and seeks to recover the amount of excessive salaries and bonuses from the director defendants and from David.

Claim II seeks a declaratory judgment that Robert Sr. is entitled to no further benefits under a deferred compensation contract and also seeks return of payments already made on the grounds that the payments were excessive and disproportionate, and that Robert Sr. breached the contract by engaging in misconduct violative of his fiduciary duties to City and its members.

Claim III concerns the SARF pension plan. It is alleged that the benefits payable to Robert Sr. and Robert Jr. are excessive and that the contributions of City to SARF for these excessive benefits were wasteful. It is further alleged that Robert Sr. and Robert Jr. engaged in misconduct violative of their fiduciary duties to City and its members and that they are, therefore, barred from receiving any benefits from SARF. City seeks recovery of any SARF benefits already paid, a declaratory judgment that Robert Sr. and Robert Jr. are entitled to no further SARF benefits, a permanent injunction against payment, and recovery from the former directors of the amount of excessive SARF contributions which they authorized and which is not otherwise received or credited to City, with interest.

Claim IV deals with amounts paid by City for expenses insured by or for Crowley family members. It is alleged that Robert Sr., Robert Jr., David, and Paul caused City to pay expenses and falsely represented to City's board of directors that the expenses were for City's benefit when actually a substantial portion of the expenses were incurred for the Crowleys' personal use, comfort, or

entertainment, or for the use and benefit of Crowley Corporation or R & M Corporation. Robert Sr., Robert Jr., David, and Paul allegedly kept inadequate records of the expenses or caused the records to be destroyed. The complaint contains a schedule of the amounts which were allegedly fraudulently converted or wasted by City's officers and directors who should have discovered the misrepresentations. An accounting is sought for all the expenses listed in the complaint and judgment for the amount of expenses which cannot be accounted for.

Claim V is concerned with automobile transactions. It is alleged that Robert Sr. and Robert Jr. converted City funds to their own use on three separate occasions in purchasing automobiles, and that they concealed the conversions. Damages are sought from both Robert Sr. and Robert Jr.

Claim VI, alleges that the defendant directors wasted City's assets by permitting three home mortgage loans at preferential interest rates to Crowley family members, and seeks recovery of the interest which City lost.

Claim VII concerns real estate appraisal fees paid by City to defendants Robert Sr., Robert Jr., R & M Corporation, and Crowley Corporation. It is alleged that the appraisals were done without meaningful evaluation, that the fees paid by City for the reports were grossly excessive, and that Robert Sr., Robert Jr., and David caused City to bear all the expenses of preparation of the reports by having City's employees type them on City's time using City's offices and supplies. The signers of the reports—Robert Sr., Robert Jr., David, and Paul—allegedly failed to disclose these facts to City's directors, converted City's payments, and received payments for the reports in violation of 12 C.F.R. § 545.6–10. The complaint further charges that the above-named signers of the reports wrongfully appropriated a business opportunity, and that City's officers and directors wasted City's assets

by allowing payment to be made for the reports. Damages are sought against the former directors, the two Crowley controlled corporations, and Paul.

Claim VIII concerns fees paid by City to Crowley Corporation, Robert Jr., and David for inspections and reports of inspections of construction progress on real estate developments financed by City. It is alleged that some inspections were unnecessary, that some inspections were in fact never done, that inspections were unsubstantiated, that the fees were excessive, and that inspection fees were paid for David's services at times he should have devoted to City's business. Defendants are charged with converting the fees, receiving payments in violation of 12 C.F.R. § 545.6–10, wasting City's funds, and wrongfully appropriating a business opportunity. An accounting and damages are demanded.

Claim IX alleges that City paid Robert Sr. and Robert Jr. an excessive amount of money for title opinions which were done at City's expense and at times they should have devoted to City's business. Thus, it is claimed that Robert Sr. and Robert Jr. thereby converted the fees in violation of federal common law and 12 C.F.R. § 545.6–10 and wrongfully appropriated a business opportunity. Further, the directors are charged with wasting City's assets by paying the fees. A money judgment against all the directors is demanded.

Claim X alleges that Crowley family members utilized City's facilities to conduct the business of selling and servicing hazard insurance policies covering real property mortgaged to City, and thus wrongfully appropriated from City the opportunity to do this business and thereby receive the profit therefrom. Both an accounting and damages are demanded.

Claim XI charges that R & M Corporation and Crowley Corporation received "commissions" from Towne Realty, Inc., in return for maintenance of favorable borrowing relationships with City. This allegedly unjustly enriched Crowley fam-

ily members, created conflicts of interest, and violated 12 C.F.R. § 545.6–10. An accounting and damages are demanded.

In Claim XII it is alleged that Bockl Development Corporation ("Bockl") sold property to Crowley family members at bargain prices so that Bockl and persons related to it could maintain favorable borrowing relationships with City. City claims that the difference between the fair market value of the properties and the price Robert Sr. and Mary paid resulted in unjust enrichment to them and a violation of 12 C.F.R. § 545.6–10.

Claim XIII alleges that in exchange for bargain sales of properties owned by a builder (Lesperance), Crowley family members acquired title to certain Lesperance properties and then gave preferential treatment to Lesperance's outstanding loans. City seeks the economic benefits realized by Crowley family members in connection with these transactions.

Claim XIV charges that City has borne substantially all the administrative expenses of managing numerous residential apartment complexes since their acquisition by various Crowley family members who thus converted City's assets and services to their own use.

Claim XV alleges that Crowley family members misappropriated assumption fees which were shown to have been paid but were not received in City's income.

The defendants have fired a broadside of motions at City's complaint. Robert Sr. and Mary filed motions to dismiss for lack of subject matter jurisdiction or, alternatively, to dismiss some claims for failure to state a claim or as barred by a statute of limitations, to strike one paragraph of the complaint, to require City to plead Claim IV with particularity, and for an order requiring City to make the complaint more definite and certain. All the other defendants except SARF and Stipp filed almost identical motions.

SARF and Stipp filed an answer in which it was alleged that SARF is a mere stakeholder of certain sums which are the subject of Claim III of the complaint, and also filed a counterclaim and cross-complaint for interpleader. SARF and Stipp desire that the Court (1) order City, Robert Sr., and Robert Jr. to interplead their respective claims in the amounts which would have otherwise become payable to the Crowleys under the regulations of SARF, (2) adjudge who is entitled to the amounts, (3) discharge SARF and Stipp from any other liability, (4) permit deposit of all sums due or past due with the Clerk of Court, (5) enjoin the interpleaded parties from prosecuting any action against SARF, and (6) award SARF and Stipp costs and attorneys' fees.

City filed an answer to SARF and Stipp's counterclaim for interpleader in which it admitted the allegations contained therein, consented to entry of judgment of interpleader, but objected to an award of attorneys' fees. Defendants Robert Sr., Mary, Robert Jr., and Patricia moved for dismissal of the cross-complaint for interpleader on the ground that the court lacks jurisdiction because the amount in controversy is less than $10,000. SARF and Stipp subsequently moved for summary judgment in accordance with their answer, counterclaim, and cross-complaint. A stipulation was later filed in which the attorneys for Robert Sr., Robert Jr., SARF, and Stipp agreed that if the Court decides it has jurisdiction over the interpleader action, summary judgment may be entered except on the entitlement of SARF and Stipp to attorneys' fees.

City has filed an amendment to its complaint, adding Fidelity as a defendant to Claims I and IV through XV, and asserting Claim XVI against Fidelity. Claim XVI alleges that Fidelity had issued a surety bond to City, that the losses detailed in Claims I and IV through XV are for losses covered by the insuring agreements of the bond, and that Fidelity has not responded to City's

demand that it indemnify and hold City harmless from the losses claimed in Claims I and IV through XV.

As hereinafter indicated, the motions to dismiss both City's complaint and the cross-complaint, as well as the motions to strike and reform the complaint, must be denied. SARF and Stipp's motion for summary judgment will be granted except to the extent that it seeks recovery of attorneys' fees.

## I. JURISDICTION

■ The defendants have argued that there is an absence of subject matter jurisdiction because the complaint does not specifically cite any statute conferring original jurisdiction on a federal district court in an action of this nature. Rule 8(a), F.R.Civ.P., provides:

"A pleading which sets forth a claim for relief * * * shall contain (1) a short and plain statement of the grounds upon which the court's jurisdiction depends * * *."

Paragraphs 1 and 2 of the City's complaint adhere to the form for alleging jurisdiction contained in Form 2(b), F.R.Civ.P. Further, if the facts giving the court jurisdiction are adequately set out in the complaint, there is no necessity to specifically plead the appropriate jurisdictional statutes. New York State Waterways Association, Inc. v. Diamond, 469 F.2d 419, 421 (2d Cir. 1971); Whitner v. Davis, 410 F.2d 24, 28 n. 3 (9th Cir. 1969); Williams v. United States, 405 F.2d 951, 954 (9th Cir. 1969); Glodgett v. Betit, 368 F.Supp. 211, 216 (D.Vt.1973); James v. Ambrose, 367 F.Supp. 1321, 1324 n. 2 (D.V.I.1973); Elmore v. Hill, 345 F.Supp. 1098, 1099 (W.D.Va.1972); Eidschun v. Pierce, 335 F.Supp. 603, 615 (S.D.Iowa 1971). The complaint herein more than adequately sets forth the grounds for jurisdiction.

■ While the defendants have approached this action with the view that there is no subject matter jurisdiction, the real issue that has been argued is whether City has a cause of action for damages resulting from the defendants' alleged violations of a Federal Home Loan Bank Board ("FHLBB" or "the Board") regulation and of their fiduciary duties as officers and directors of a federal savings and loan association. An action to enforce a FHLBB regulation is one of which a federal district court has original jurisdiction under both 28 U.S.C. §§ 1331(a)[1] and 1337. Gibson v. First Federal Savings and Loan Assn. of Detroit, 504 F.2d 826 (6th Cir. 1974); Milberg v. Lawrence Cedarhurst Federal Savings and Loan Assn., 496 F.2d 523 (2d Cir. 1974); Murphy v. Colonial Federal Savings and Loan Assn., 388 F.2d 609 (2d Cir. 1967); Goldman v. First Federal Savings and Loan Assn. of Wilmette, 377 F.Supp. 883 (N.D.Ill.1974); Miller v. Standard Federal Savings and Loan Assn., 347 F.Supp. 185 (E.D.Mich. 1972); Gibson v. First Federal Savings and Loan Assn., 347 F.Supp. 560 (E.D. Mich.1972). But cf., Mamber v. Second Federal Savings and Loan Assn. of Boston, 275 F.Supp. 170 (D.Mass.1967).

■ Similarly, 28 U.S.C. § 1331(a) is a grant of subject matter jurisdiction to actions arising under federal common law. Illinois v. City of Milwaukee, 406 U.S. 91, 98–100, 92 S.Ct. 1385, 31 L.Ed. 2d 712 (1972); Ivy Broadcasting Co. v. American Telephone and Telegraph Co., 391 F.2d 486, 492 (2d Cir. 1968). See, Romero v. International Terminal Operating Co., 358 U.S. 354, 393, 79 S.Ct. 468, 3 L.Ed.2d 368 (Brennan, J., dissenting and concurring).

Since City's claim that it has a cause of action arising under federal law is neither insubstantial nor frivolous, Mr. Justice Black's statement in Bell v. Hood, 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946), is applicable here:

"Jurisdiction, therefore, is not defeated as respondents seem to contend, by the possibility that the averments

---

1. The amount in controversy here is over $10,000.

might fail to state a cause of action on which petitioners could actually recover. For it is well settled that the failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction. Whether the complaint states a cause of action on which relief could be granted is a question of law and just as issues of fact it must be decided after and not before the court has assumed jurisdiction over the controversy. If the court does later exercise its jurisdiction to determine that the allegations in the complaint do not state a ground for relief, then dismissal of the case would be on the merits, not for want of jurisdiction. * * *"

Based on the foregoing, there is subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331(a) and 1337.

## II.   FAILURE TO STATE A CLAIM

### A.   *FHLBB Regulations*

■ City is a federal savings and loan association organized and existing under § 5 of the Home Owners' Loan Act of 1933 ("the Act"), as amended, 12 U.S.C. § 1464. The FHLBB, an agency of the United States Government, is authorized to prescribe rules and regulations governing the "organization, incorporation, examination, operation, and regulation" of associations organized under the Act. 12 U.S.C. § 1464(a). The Board has, accordingly, promulgated regulations pursuant to this authority. See, 12 C.F.R., Ch. V, Subch. C, §§ 541–556. These regulations have the force and effect of a statute. Milberg v. Lawrence Cedarhurst Federal Savings and Loan Assn., supra; Community Federal Savings and Loan Assn. v. Fields, 128 F.2d 705, 707 (8th Cir. 1942).

■ City seeks to recover damages for the defendants' alleged violations of 12 C.F.R. § 545.6–10. That regulation reads in relevant part:

" § 545.6–10  Initial loan charges.

"No director, officer, or employee of a Federal association, and no person or firm regularly serving such association in the capacity of attorney-at-law, may receive from the association or from any other source any fee or other compensation of any kind in connection with the procuring of any particular loan from or by such association. Borrowers may be required to pay the necessary initial charges in connection with the making of a loan, including the actual costs of title examination, appraisal, credit report, survey, drawing of papers, closing of the loan, and other necessary incidental services and costs in such reasonable amounts as may be fixed by the board of directors; such necessary initial charges may be collected by the association from the borrower and paid to any persons, including any such director, officer, employee, attorney or firm rendering such services: *Provided,* That no discount, rebate, or commission on any such charge may be received by any director, officer, or employee of a Federal association, or by any person or firm regularly serving such association in the capacity of attorney-at-law, but such discounts, rebates, or commissions, when allowed as compensation for services performed, may be received and retained by the association. * * *"

Violations of this regulation are alleged in the complaint in Claims VII (real estate appraisals), VIII (inspection reports), IX (legal fees), XI ("commissions" from Towne Realty), and XII (bargain sale of Bockl Development Corporation properties to Crowley family members). In its brief in opposition to the defendants' motions to dismiss, City has further asserted that the conduct of the defendants alleged in Claims II (deferred compensation contract), III (SARF pension plan), X (insurance agency business), XIII (bargain sale of Lesperance properties to Crowley family

members), and XV (misappropriation of assumption fees) constituted violations of the above-quoted regulation.

The Act does not explicitly provide for a private right of action whereby federal savings and loan associations can sue for damages caused by violations of the Board's regulations. The Act does contain extensive provisions for the Board to enforce its regulations by means of, *inter alia,* cease and desist orders against associations, and removal or suspension of officers and directors of associations. Criminal sanctions are prescribed for violation of FHLBB orders, and judicial review is also provided. 12 U.S.C. § 1464(d).

The defendants have argued that the ancient maxim, *"expressio unius est exclusio alterius"* (expression of one thing is exclusion of others), should apply, and that the Board's enforcement powers should be ruled to be the exclusive means of enforcing the duties and obligations imposed by the Act and regulations.

This canon of statutory construction is not, however, wholly determinative of whether a private cause of action should be implied. As the Court stated in Ash v. Cort, 496 F.2d 416, 421 (3d Cir. 1974):

"＊ ＊ ＊ This rule of statutory construction does not alter the process used to determine if a cause should be inferred in the absence of statutory language indicating legislative intent; rather, it aids the court merely in determining when legislative intent to preclude a remedy can be fairly implied."

The Court in Ash v. Cort also explained the relevance of legislative intent to the determination of whether a private cause of action should be implied:

"＊ ＊ ＊ Finding an implied cause pursuant to these criteria is not entirely an exercise in divining legislative intent. Certainly, legislative intent is relevant; where the legislature clearly has indicated its intent to grant or withhold a cause of action, implicitly or explicitly, courts will give effect to that intent. E. g., National Railroad Passenger Corp. v. National Association of Railroad Passengers, 414 U.S. 453, 458–461, 94 S.Ct. 690, 38 L.Ed.2d 646 (1974). *Absent some reasonably clear indication of legislative attention to the possible creation of a cause of action, however, courts ascertain the policies underlying the substantive law and determine the propriety, as a means of effectuating those policies, of affording litigants a particular remedy.* Bivens v. Six Unknown Named Agents, *supra,* 403 U.S. [388] at 395–397, 91 S.Ct. 1999 (opinion of the Court), and 402–403, n. 4, 91 S.Ct. 1999 [29 L.Ed. 2d 619] (Harlan, J., concurring); Holloway v. Bristol-Meyers Corp., [158 U.S.App.D.C. 207] 485 F.2d 986, 989–999 (D.C.Cir. 1973)." (Emphasis added.) 496 F.2d at 421.

The defendants have not been able to point to any legislative history or statutory provision which convincingly shows that Congress intended to withhold a private right of action. Indeed, there is no definitive evidence that Congress has ever considered the question. Contrast, National Railroad Passenger Corp. v. National Association of Railroad Passengers, 414 U.S. 453, 458–461, 94 S.Ct. 690, 38 L.Ed.2d 646 (1974). Thus, the question of whether to imply a cause of action here turns on first, whether the regulation allegedly violated was designed to protect City from the injuries of which it complains, and secondly, whether the implication of such a cause of action is in furtherance of the Act's purposes. Bivens v. Six Unknown Named Agents, 403 U.S. 388, 395–397, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971); Wyandotte Co. v. United States, 389 U.S. 191, 200–202, 88 S.Ct. 379, 19 L.Ed.2d 407 (1967); J. I. Case Co. v. Borak, 377 U.S. 426, 431–435, 84 S.Ct. 1555, 12 L. Ed.2d 423 (1964); Ash v. Cort, supra; Greater Iowa Corp. v. McLendon, 378 F. 2d 783, 789–791 (8th Cir. 1967).

An examination of the regulation upon which City bases its claims reveals that it is designed to protect (1) federal savings and loan associations from loss of assets by deprivation of commissions paid to association officers and directors, and (2) association members from payment to officers and directors of excessive charges for services like title examination and appraisal. The association here is within the class of persons protected by the regulation, and its claim seeks to preserve an impairment of the financial integrity of the lending institution. It is also the appropriate representative of the second class of persons protected, for the result of its action would conserve and protect the assets of its members and depositors.

The implication of a cause of action would further the purposes of the Act. Among the purposes are the protection of the financial integrity of federal savings and loan associations and the conservation of the assets of members of the association. Thus, allowing City a cause of action for damages resulting from violations of FHLBB regulations is justified.

An examination of the precedents in this area demonstrates that most, if not all, of the courts which have faced the question have held that a private cause of action is available to enforce the Board's regulations. There have been several cases involving the right of a federal savings and loan association member to inspect membership lists. Murphy v. Colonial Federal Savings and Loan Assn., 388 F.2d 609 (2d Cir. 1967); Kupiec v. Republic Federal Savings and Loan Assn., 384 F.Supp. 1008, 373 F.Supp. 1382 (N.D.Ill.1974), reversed 512 F.2d 147 (7th Cir. 1975); Durnin v. Allentown Federal Savings and Loan Assn., 218 F.Supp. 716 (E.D. Pa.1963). The defendants have attempted to distinguish this line of cases by arguing that the relief requested there was an injunction and not damages. This ignores the teaching of J. I. Case Co. v. Borak, supra, that where

federal rights are invaded the federal courts " * * * have the power to grant all necessary remedial relief * * *." 377 U.S. at 435, 84 S.Ct. at 1561.

Another group of cases has involved actions by mortgagors against federal savings and loan associations for damages resulting from alleged violations of FHLBB regulations. Gibson v. First Federal Savings and Loan Assn. of Detroit, 504 F.2d 826 (6th Cir. 1974); Milberg v. Lawrence Cedarhurst Federal Savings and Loan Assn., 496 F.2d 523 (2d Cir. 1974); Goldman v. First Federal Savings and Loan Assn. of Wilmette, 377 F.Supp. 883 (N.D.Ill.1974); Kinee v. Abraham Lincoln Federal Savings & Loan Assn., 365 F.Supp. 975 (E. D.Pa.1973); Gibson v. First Federal Savings and Loan Assn., 364 F.Supp. 614 (E.D.Mich.1973), 347 F.Supp. 560 (E.D.Mich.1972); Miller v. Standard Federal Savings and Loan Assn., 347 F. Supp. 185 (E.D.Mich.1972).

While in some of the above-cited cases the plaintiffs' claims have ultimately been determined adversely to them, none of these courts has questioned the proposition that "[i]f a Home Owner's Loan Act regulation has been violated, and damages result therefrom, the federal courts are available to provide remedy." Goldman v. First Federal Savings and Loan Assn. of Wilmette, 377 F. Supp. 883, 885 (N.D.Ill.1974).

The only case in which a cause of action for violations of FHLBB regulations was not allowed was McNeill v. Jacobson, 55 Wis.2d 254, 198 N.W.2d 611 (1972). The Court ruled that borrowers and their creditors did not have a cause of action to recover various fees which had been charged in connection with loans that were in excess of what was allowed under the regulations. The Court reasoned that the regulations were designed to protect the depositors of the association from depletion of their assets and not borrowers and their creditors.

This decision is not determinative of whether City should have a cause of action for violations of FHLBB regulations, since, as discussed above, City is within the class that the regulation seeks to protect.

Another case which is relevant here is Broadway Federal Savings and Loan Assn. of Los Angeles v. Howard, 133 Cal.App.2d 382, 285 P.2d 61 (1955), which was an action by a federal savings and loan association to recover damages for the secret profits made by its president and general manager by the use of the association's assets. The appellate court affirmed the trial judge's grant of a money judgment and stated that both the defendant's fiduciary obligations and FHLBB regulations provided a basis for liability.

Therefore, City does have the right to bring an action to recover damages for the alleged violations of FHLBB regulations.

### B. *Federal Common Law*

In each of the fifteen claims in the original complaint, City has alleged that the defendants violated their fiduciary duties as officers and directors by wasting corporate assets and appropriating business opportunities of City. There are also claims of fraud, conversion, unjust enrichment, and breach of contract. City has argued that these claims arise under a federal common law[2] governing the internal management of federal savings and loan associations. The defendants have not denied that they had fiduciary obligations toward City, nor that they may be held liable for fraud, conversion, unjust enrichment, or breach of contract. They have, however, vigorously contended that these claims arise under state law (presumably that of Wisconsin) rather than any federal common law. The parties have thus tendered the issue of whether there is a federal common law governing the internal management of federal savings and loan associations.

Initially, it must be noted that this issue may not be ripe for decision. Since City's claims for violations of FHLBB regulations have been held to state a claim, City's other claims may be viewed as state law claims, of which there is jurisdiction under the doctrine of pendent jurisdiction. United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1960). Further, no claim asserted by City is one which is barred by a state law rule but which could be allowable if a federal common law rule was held to apply. Contrast, Clearfield Trust Co. v. United States, 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838 (1943); Sola Electric Co. v. Jefferson Electric Co., 317 U.S. 173, 63 S.Ct. 172, 87 L.Ed. 165 (1942); D'Oench Duhme & Co. v. Federal Deposit Insurance Corp., 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942). In the absence of a "choice of law" problem with regard to any substantive common law claim asserted by City, it may be questioned whether a decision on the existence of a federal common law of internal management is necessary. See, Wallis v. Pan American Petroleum Corp., 384 U.S. 63, 68, 86 S. Ct. 1301, 16 L.Ed.2d 369 (1966). In order to facilitate the future conduct of this litigation, however, it is appropriate to decide this broad issue at present.

The rule of Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), does not apply to issues arising from or having a bearing on a federal regulatory program, and in such a case the federal courts have the competence to choose a state rule of law or create a federal one. See, e. g., United States v. Little Lake Misere Land Co., Inc., 412 U.S. 580, 592, 93 S.Ct. 2389, 37 L.Ed.2d 187 (1973); Textile

---

2. A workable definition of the term "federal common law" is contained in Hart and Wechsler's, The Federal Courts and The Federal System, at 770 (2d ed. 1973):

" * * * federal rules of decision where the authority for a federal rule is not explicitly or clearly found in federal statutory or constitutional command."

Workers Union v. Lincoln Mills, 353 U. S. 448, 77 S.Ct. 912, 923, 1 L.Ed.2d 972 (1957); United States v. Albrecht, 496 F.2d 906 (8th Cir. 1974); Ivy Broadcasting Co. v. American Telephone & Telegraph Co., 391 F.2d 486 (2d Cir. 1968). See, Mishkin, The Variousness of "Federal Law": Competence and Discretion in the Choice of National and State Rules for Decision, 105 U.Pa.L. Rev. 797, 799–800 (1957). As the Court stated in United States v. Little Lake Misere Land Co., supra, 412 U.S. at 593, 93 S.Ct. at 2397:

 " * * * the inevitable incompleteness presented by all legislation means that interstitial federal lawmaking is a basic responsibility of the federal courts. * * * "

City, like other federal savings and loan associations organized under the Act, operates under the FHLBB's " * * * comprehensive regulations covering all aspects of every federal savings and loan association 'from its cradle to its corporate grave.' People of State of California v. Coast Federal Savings & Loan Ass'n, S.D.Cal.1951, 98 F.Supp. 311, 316. * * * " Meyers v. Beverly Hills Federal Savings & Loan Assn., 499 F.2d 1145, 1147 (9th Cir. 1974). The Act and the regulations promulgated by the FHLBB have been held to establish federal pre-emption over the regulation of federal savings and loan associations and thereby preclude any state legislation from applying. Meyers v. Beverly Hills Federal Savings & Loan Assn., supra; Murphy v. Colonial Federal Savings and Loan Assn., 388 F.2d 609 (2d Cir. 1967); Federal Savings & Loan Ins. Corp. v. Third National Bank in Nashville, 153 F.2d 678, 6th Cir., cert. denied, 329 U.S. 718, 67 S.Ct. 49, 91 L. Ed. 622 (1946); Federal Savings and Loan Ins. Corp. v. Kearney Trust Co., 151 F.2d 720 (8th Cir. 1945); Durnin v. Allentown Federal Savings and Loan Assn., 218 F.Supp. 716 (E.D.Pa.1963); Elwert v. Pacific First Federal Savings and Loan Assn. of Tacoma, Washington, 138 F.Supp. 395 (D.Or.1956); People

of State of California v. Coast Federal Savings & Loan Assn., 98 F.Supp. 311 (S.D.Cal.1951); First Federal Savings & Loan Assn. of Wisconsin v. Finnegan, 19 F.Supp. 678 (W.D.Wis.1937), affirmed sub nom., First Federal Savings & Loan Assn. of Wisconsin v. Loomis, 97 F.2d 831 (7th Cir. 1938), cert. granted, 305 U.S. 564, 59 S.Ct. 962, 83 L.Ed. 355 (1938), cert. dismissed sub nom., Martin v. First Federal Savings and Loan Assn., 305 U.S. 666, 59 S.Ct. 363, 83 L.Ed. 432 (1939); People ex rel. Dept. of Public Works v. Metrim Corp., 187 Cal.App.2d 289, 9 Cal.Rptr. 584 (1960); Larwood Co. v. San Diego Federal Savings and Loan Assn., 185 Cal. App.2d 450, 8 Cal.Rptr. 362 (1960); Pearson v. First Federal Savings and Loan Assn. of Tarpon Springs, 149 So. 2d 891 (Fla.App.1963); Ochs v. Washington Heights Federal Savings and Loan Assn., 17 N.Y.2d 82, 268 N.Y.S.2d 294, 215 N.E.2d 485 (1966). But see, First Federal Savings and Loan Assn. of Atlanta v. Norwood Realty Co., 212 Ga. 524, 93 S.E.2d 763 (1956).

The exclusivity of federal law means that when state courts "deal with the internal affairs of federal savings and loan associations, * * * they are nonetheless applying federal law." Murphy v. Colonial Federal Savings and Loan Assn., 388 F.2d 609, 612 (2 Cir. 1967). See, Local 174 v. Lucas Flour Co., 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962).

The fiduciary duties of officers and directors to a federal savings and loan association are matters dealing with the internal affairs of the association. Thus, as the *Murphy* court stated, a state court adjudicating in this area would have to apply federal common law rules rather than the laws of its own state.

The decisions in Gibson v. First Federal Savings and Loan Assn. of Detroit, supra, and Kinee v. Abraham Lincoln Federal Savings & Loan Assn., supra, do not belie the conclusion that federal law governs the internal affairs of federal

savings and loan associations. Both were actions brought by borrowers against federal savings and loan associations in which the plaintiffs-borrowers asserted claims under the FHLBB regulations and under the common law of fiduciary duties. After the claims based on FHLBB regulations were determined to be meritless, the common law claims were described as arising under state law and were dismissed, the courts refusing to exercise pendent jurisdiction over them.

These decisions are not controlling here for two reasons: First, it is not obvious that the issue of whether a federal savings and loan association has fiduciary duties to its borrowers is one dealing with the internal affairs of the association. Secondly, in neither case did the court explicitly consider whether the alleged fiduciary duties of associations to borrowers were matters which should be controlled by federal rather than state law. Here, by contrast, the admitted fiduciary duties of officers and directors to City are at issue and are matters dealing with the internal affairs of the association.

■ The federal common law governing the internal affairs of federal savings and loan associations includes the usual common law fiduciary duties. The Act itself states:

"Whenever, in the opinion of the Board, any director or officer of an association has * * * committed or engaged in any act, omission, or practice which constitutes a breach of his *fiduciary duty* as such director or officer, and the Board determines that the association has suffered or will probably suffer substantial financial loss or other damage or that the interests of its savings account holders could be seriously prejudiced by reason of such * * * breach of *fiduciary duty*, and that such * * * breach of *fiduciary duty* is one involving personal dishonesty on the part of such director or officer, the Board may serve upon such director or officer a written notice of its intention to remove him from office." (Emphasis added.) 12 U.S.C. § 1464(d)(4)(A).

The section quoted above was added by the 1966 amendments to the Act. Pub.L. 89–695, Title I, § 101(a), 80 Stat. 1028 (Oct. 16, 1966). In Reich v. Webb, 336 F.2d 153 (9th Cir. 1964), cert. denied, 380 U.S. 915, 85 S.Ct. 890, 13 L.Ed.2d 800 (1965), the court dealt with the question of fiduciary duties imposed by the Act before the amendments. Members of a federal savings and loan association had sought to intervene pursuant to Rule 24(a)(2), F.R.Civ.P., in an action between the association and the Board. The claim of the members was a derivative one—that a group of former officers and directors had breached a fiduciary duty by profiting from the sale of control of the association. The court ruled that intervention was unnecessary because the language "or any other law," contained in 12 U.S.C. § 1464(d)(1), included common law fiduciary duties which the FHLBB could enforce.

In the later adjudication of the facts which gave rise to Reich v. Webb, supra, it was held that the plaintiff association was entitled to recover the profits made by the former officers and directors, in violation of their fiduciary duties when they sold control of the association. Beverly Hills Federal Savings and Loan Assn. v. Federal Home Loan Bank Board, 371 F.Supp. 306 (C.D.Cal.1973). The Court stated:

"* * * the duties and responsibilities imposed upon fiduciaries and those in positions of trust by *generally accepted and applied common law principles* are implicit in the Act and the regulations promulgated thereunder by the agency responsible for enforcement and implementation of the Act." (Emphasis added.) 371 F.Supp. at 314.

See also, Federal Savings & Loan Ins. Corp. v. Third National Bank in Nashville, supra (action by FSLIC as assignee of a federal savings and loan as-

sociation for damages resulting from misappropriation of funds by association officers); Federal Savings & Loan Ins. Corp. v. Kearney Trust Co., supra (same).

■ City's claims of wasting corporate assets, appropriation of business opportunities, fraud, conversion, unjust enrichment, and breach of contract shall be deemed to arise under the federal common law governing the internal management of federal savings and loan associations.

## C. *Exhaustion of Administrative Remedies*

The defendants have argued that City's complaint must be dismissed due to failure to exhaust available administrative remedies. Specifically, it is claimed that City should apply to the Board and ask it to institute actions against any of the defendants who have violated FHLBB regulations or breached their fiduciary duties.

The Act itself provides no specific procedure for the Board to bring an action on behalf of a federal savings and loan association against former officers and directors for damages. The defendants have, however, pointed to dicta in Beverly Hills Federal Savings and Loan Assn. v. Federal Home Loan Bank Board, 33 F.R.D. 292, 293 (S.D.Cal. 1962), to the effect that the FHLBB could "seek relief on behalf of the association if for instance, money were stolen by management." Defendants also claim that the holding of Reich v. Webb, supra—that the FHLBB can enforce fiduciary obligations—supports their claim that City should be required to petition the FHLBB for relief.

It is important to note, however, that the language which the court relied upon in Beverly Hills Federal Savings and Loan Assn. v. Federal Home Loan Bank Board, supra, is no longer contained in the Act. Additionally, in that case the association was itself a party and subsequently was able to recover against former officers and directors for their breach of fiduciary duties. Beverly Hills Federal Savings and Loan Assn. v. Federal Home Loan Bank Board, supra. Furthermore, it must be noted that in Gibson v. First Federal Savings and Loan Assn., 347 F.Supp. 560, 566 (E.D. Mich.1972), an action for damages, the Court stated that "The Board, however, cannot grant complete remedial relief (only injunctive relief) * * *."

But here it is unnecessary to determine whether the Board could maintain an action for damages on behalf of a federal savings and loan association against former officers and directors, because it is apparent that the Board has been made aware of the circumstances giving rise to City's claims and has failed to act on them. City has filed the affidavit of one Eugene H. Fischer, its president and managing officer. In the affidavit (p. 2), he stated:

"* * * by Resolution No. 72–51 dated January 13, 1972, the Federal Home Loan Bank Board ordered that:

'City shall take appropriate and expeditious action to recover such damages as it has suffered as a result of the conduct set forth in the Report of the Special Examination of City, dated September 1, 1971 . . .'

The conduct referred to in the Report of the Special Examination of City dated September 1, 1971 is the subject of the Complaint in this action."

The defendants have not contested the truth of the matters asserted in Fischer's affidavit.

■ Therefore, City has no available administrative remedies to exhaust, and to require it to petition the Board would only be a waste of time. Where the Board has knowledge of a situation and has refused to act, there is no bar to a private action. Milberg v. Lawrence Cedarhurst Federal Savings and Loan Assn., supra; Murphy v. Colonial Federal Savings and Loan Assn., supra.

### D. *Real Party in Interest*

██ The defendants have raised the issue of whether City is the "real party in interest," Rule 17(a), F.R.Civ.P., with respect to Claims VII (real estate appraisals), VIII (inspection reports), and IX (legal fees). Specifically, it is argued that to the extent those claims arise under 12 C.F.R. § 554.6–10, the borrowers who paid the fees, rather than City, are the real parties in interest. City is claimed to be merely a conduit for the payments, and allegedly acquired no rights to see that the fees paid were in accordance with the regulation.

This argument fails on two grounds: First, City did have an interest in seeing that the fees paid to officers and directors were in accordance with the regulations, since if the fees were unreasonable in amount or lacked consideration, it would damage City's ability to attract borrowers and possibly subject it to liability to borrowers who had paid excessive fees.

Furthermore, Rule 17(a) specifically allows "a party with whom or in whose name a contract has been made for the benefit of another * * *" to sue. In Claims VII, VIII, and IX, City has alleged that it entered into contracts with the defendants on behalf of association members for services and that City paid the defendants. Since City was a party to the contracts, the above-cited language of Rule 17(a) allows City to maintain this action. Cf., Moore's Federal Practice, ¶ 17.13[1], at 501 (2d ed. 1974).

### E. *Business Opportunity*

The defendants have argued that the allegations of wrongful appropriation of business opportunities contained in Claims VII (real estate appraisals), VIII (inspection reports), IX (legal fees), and X (insurance agency business) fail to state a claim because City could not engage in those activities.

██ The defendants' argument with respect to Claims VII, VIII, and IX apparently is that those businesses were not in fact opportunities which City could have engaged in. This raises questions of fact and as such is not resolvable on a motion to dismiss. As the Court stated in Conley v. Gibson, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957):

> "* * * a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. * * *"

Since the *Conley* test has not been satisfied, the motion to dismiss must be denied.

As to the business of selling hazard insurance (Claim X), the defendants have contended that engaging in this business was beyond City's power at the time in question, and since the opportunity was *ultra vires*, it could not be wrongfully appropriated by the defendants. Support for this argument is, however, not present. The opinion of the Wisconsin Attorney General as to whether selling life insurance was *ultra vires state* chartered savings and loan associations, which was cited by the defendants, is not determinative of City's powers as a *federal* savings and loan association. Further, the dicta in Goodman v. Perpetual Building Assn., 320 F.Supp. 20, 28 (D.D.C.1970), that federal savings and loan associations have been prohibited by the Board from acting as an agent or broker for the sale of insurance, is not supported by citation to a regulation or prior case.

Additionally, the fact that associations have been expressly authorized to form service corporations to write insurance since 1970, 12 C.F.R. § 545.9–1(a), is not determinative that they could not write insurance before 1970. Since the sale of hazard insurance aids associations in furthering the purposes of the Act, 12 U.S.C. § 1464(a), it cannot be said to be clearly *ultra vires*. Thus, defendants' argument must fail.

## F. *Towne Realty Commissions*

In Claim XI, as summarized above, City has alleged that the receipt of "commissions" from Towne Realty by R & M Corporation and Crowley Corporation in return for maintenance of favorable borrowing relationships with City was a violation of 12 C.F.R. § 545.6–10. The defendants have claimed that the failure to allege a specific connection between the alleged payments and any specific loan made to Towne Realty means that Claim XI must be dismissed for failure to state a claim.

This argument is based on a construction of the regulation that is too restrictive. A reading of the regulation indicates that it embraces the situation where lump sum payments are received in return for a continuing series of particular loans, as is alleged in Claim XI. The motion to dismiss must, therefore, be denied.

## G. *Generally*

The defendants have raised sundry other objections to the claims asserted by City. After careful consideration, it is apparent that they rate neither dismissal of any claim nor comment.

In summary, each of the claims asserted by City is one which is not barred at this time. The motions to dismiss must, therefore, be denied.

## III. STATUTE OF LIMITATIONS

As an alternative to their motions to dismiss for lack of subject matter jurisdiction and for failure to state a claim, the defendants have interposed a motion to dismiss those portions of City's complaint which contain claims barred by a statute of limitations.

It is true that some of the actions of which City has complained took place many years prior to the filing of this action and could conceivably be barred by a statute of limitations. City has, however, claimed that the actions of the defendants amounted to fraudulent concealment of the facts, and that the defendants should be estopped from asserting a statute of limitations as a defense. See, Glus v. Brooklyn Eastern District Terminal, 359 U.S. 231, 79 S.Ct. 760, 3 L.Ed.2d 770 (1959); Spevack v. United States, 390 F.2d 977, 182 Ct.Cl. 1884 (1968); Saylor v. Lindsley, 302 F.Supp. 1174 (S.D.N.Y.1969); Peters v. Kell, 12 Wis.2d 32, 106 N.W.2d 407 (1960).

The arguments posed by the parties are premature, since they depend on the resolution of factual issues. It is impossible for the judgment to be made at this time that City can prove no set of facts which would entitle it to relief. Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The motion to dismiss must be denied.

## IV. OTHER MOTIONS

In addition to the foregoing motions to dismiss, the defendants have filed motions to (1) strike paragraph 25 of the complaint as immaterial and impertinent, (2) require City to plead with particularity those acts contained in Claim IV which are alleged to constitute fraud, and (3) require plaintiff to make a more definite statement with respect to certain portions of the complaint.

Paragraph 25 of the complaint is contained in Claim I (salaries and bonuses) and reads:

> "25. Since 1965, the salaries, bonuses and directors' fees paid by City to Robert Sr., Robert Jr. and David have consistently exceeded by more than 50% the *highest* salaries, bonuses and directors' fees annually paid to officers of savings and loan associations of comparable size doing business in Wisconsin."

Rule 12(f), F.R.Civ.P., gives the court power to strike any matter from a pleading which is immaterial or impertinent. Impertinence may be defined as a matter which is both irrelevant or unresponsive to the issues in an action and could not be put in issue or introduced into evidence. See, Moore's Federal Practice, ¶ 12.21, at 2421–2422 (2d ed. 1974). Defendants have not made an

adequate showing that the matter contained in paragraph 25 is irrelevant. As was said by this court in Warner and Swasey Co. v. Held, 256 F.Supp. 303, 312 (E.D.Wis.1966), "[m]atter will not be stricken unless it is evident that it has no bearing upon the subject matter of the litigation."

As to the motion to require the allegations of fraud contained in Claim IV to be pled with particularity, Rule 9(b), F.R.Civ.P., it is this Court's judgment that the allegations are made with sufficient particularity to enable the defendants to frame responsive pleadings and conduct discovery. This is especially true since Claim IV contains an allegation that the defendants kept inadequate records or caused what records there were to be destroyed.

Finally, the motion to compel a more definite statement pursuant to Rule 12(e), F.R.Civ.P., must also be denied. The complaint herein is not so "vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading * * *." Rule 12(e), F.R. Civ.P.

It is, therefore, this Court's judgment that the motions to reform the complaint must be denied.

### V. INTERPLEADER

As explained above, defendants SARF and Stipp have filed a counterclaim and cross-complaint for interpleader and have moved for summary judgment. City has answered the counterclaim, admitted the allegations, and consented to entry of judgment, except for attorneys' fees. Defendants Robert Sr., Mary, Robert Jr., and Patricia have filed motions to dismiss the cross-complaint for interpleader for lack of the requisite jurisdictional amount, and subsequently stipulated to entry of summary judgment if the Court determines there is jurisdiction over the interpleader action, save for the entitlement of SARF and Stipp to attorneys' fees.

■ The motions to dismiss the cross-complaint must be denied. SARF and Stipp's counterclaim and cross-complaint for interpleader arise out of the same "transaction or occurrence" which is the subject matter of City's complaint. Rule 13(a), (g), F.R.Civ.P. There is, therefore, ancillary jurisdiction over it. Moore v. New York Cotton Exchange, 270 U.S. 593, 46 S.Ct. 367, 70 L.Ed. 750 (1926). See Wright, Law of Federal Courts, §§ 79, 80 (2d ed. 1970).

■ Since the relevant parties have agreed to the entry of summary judgment, SARF and Stipp's motion for summary judgment on their counterclaim and cross-complaint for interpleader will be granted except for their claim for attorneys' fees. Since no authority has been presented to demonstrate that SARF and Stipp are entitled to attorneys' fees, summary judgment on this part of their claim must be denied.

### VI. ORDER

It is therefore, ordered that the motions to dismiss City's complaint are denied.

It is further ordered that the motions to strike paragraph 25 of City's complaint, to require City to plead Claim IV with particularity, and to require City to make its complaint more definite are denied.

It is further ordered that the motions to dismiss the cross-complaint for interpleader are denied.

It is further ordered that summary judgment is granted on SARF and Stipp's counterclaim and cross-complaint for interpleader, except that summary judgment on their claim for attorneys' fees is denied. The attorneys for SARF and Stipp shall submit an order for judgment in accordance with this decision and order after first submitting it to the other parties for approval as to form.