Richard DeSIMONE and Joanne
DeSimone

v.

**WARWICK FEDERAL SAVINGS &
LOAN ASSOCIATION.**

Civ. A. No. 79–146.

United States District Court,
D. Rhode Island.

Jan. 22, 1980.

Sister Arlene Violet, Providence, R.I., for plaintiffs.

Peter J. McGinn, Providence, R.I., for defendant.

MEMORANDUM AND ORDER

PETTINE, Chief Judge.

Plaintiffs, Mr. and Mrs. DeSimone, have two outstanding mortgage loans from the defendant savings and loan association (Warwick), one given in 1960 and the other in 1964. They have brought this suit against Warwick, alleging that a number of the bank's practices regarding the loans violate the agreement and/or federal law. In the instant motion Warwick claims that the plaintiffs fail to state a claim upon which relief can be granted; since interrogatories are relied on, the motion is styled as a

motion for summary judgment, pursuant to Rule 12(b).

Originally, Warwick complained of the vagueness of the DeSimones' claims of violations of federal law. Indeed, the complaint was extremely general, failing to specify which statutes or regulations had allegedly been violated. In a further memorandum, the plaintiffs spelled out their claims more fully. As best as this Court can gather, they make the following complaints:

Warwick raised the interest rates on the loans in 1966 or 1967, pursuant to the terms of the agreement. Such unilateral action is not provided for in the regulations governing mortgages by federal savings and loan associations, 12 C.F.R. 545.6–11, and thus violates that regulation.

Before raising the interest rate, Warwick was required by 12 C.F.R. 545.6–11 to disclose that borrowers could prepay the entire loan at the old rate, and Warwick failed to do so. Plaintiffs further allege that the contracts between the parties required such a disclosure.

Warwick's actions in debiting late charges and collecting interest thereon violated both the contract agreement and 12 C.F.R. 545.6–11(d) (the regulation authorizing late charges).

Warwick failed to make disclosures required by the Truth in Lending Act.

Warwick's practices violated plaintiffs' constitutional rights.

Warwick unilaterally extended the term of the loan, in violation of the agreement.

Warwick discontinued its agreed-upon practice of paying interest on the money held in plaintiffs' escrow account.

Warwick failed in its contractual duty to notify plaintiffs of the correct amounts owed for taxes.

The plaintiffs claim that all of the contract violations listed above are questions of federal common law.

Plaintiffs' constitutional claims can be easily disposed of. In their supplementary memorandum of law, plaintiffs admit that case law goes against them, and they waive these claims. Such claims are accordingly dismissed.

■ The Truth in Lending claim can also be decided at the outset. Plaintiffs rely on a theory of "continuing violation" to get around the problem posed by the effective date of the Act (1969) and the one-year statute of limitations. They cite no authority to support their reading of the Truth in Lending Act, and the cases the Court has found have unanimously rejected such a theory. *Stevens v. Rock Springs National Bank*, 497 F.2d 307 (10th Cir. 1974); *Wachtel v. West*, 476 F.2d 1062 (6th Cir. 1973); *Harvey v. Housing Development Corp. and Information Center*, 451 F.Supp. 1198 (W.D. Mo.1978); *Fenton v. Citizens Saving Association*, 400 F.Supp. 874 (W.D.Mo.1975); *Kristiansen v. John Mullins & Sons, Inc.*, 59 F.R.D. 99 (E.D.N.Y.1973). The Federal Home Loan Bank Board Memo T–56,[1] offered by plaintiffs, does not support their position, since it requires disclosure of escalation clauses contained in loan contracts executed on or after July 1, 1969. Here, the contracts were executed in 1960 and 1964, and the interest rate was raised in 1966 or 1967.[2] The truth in lending claims are therefore dismissed.

■ The other issues are more complex. First, there is some confusion as to jurisdiction. We need not analyze all of the bases of jurisdiction cited by plaintiffs, since 28 U.S.C. § 1337 quite clearly confers jurisdic-

---

1. T–56 provides, that as to

    *The Truth-in-Lending Act*, that disclosure of the provisions of escalation clauses contained in a loan contract or other debt instrument executed on or after July 1, 1969 (the effective date of the above Act) is required, as set forth in Interpretation Section 226.810 (attached) issued in implementation of Regulation Z.

2. The memoranda disagree as to the date of the increase in interest rate, but, as defendant recognizes, the disagreement is immaterial to the present decision.

tion, regardless of the amount in controversy, over the plaintiffs' statutory and regulatory claims. These issues raised by the DeSimones arise out of the Home Owners Loan Act, 12 U.S.C. § 1461 *et seq.*, which is widely considered to be an "act regulating commerce." *Murphy v. Colonial Federal Savings & Loan Association*, 388 F.2d 609 (2d Cir. 1967); *Goldman v. First Federal Savings & Loan Association of Wilmette*, 377 F.Supp. 883 (N.D.Ill.1974); *City Federal Savings & Loan Association v. Crowley*, 393 F.Supp. 644 (E.D.Wis.1974); *Miller v. Standard Federal Savings & Loan Association*, 347 F.Supp. 185 (E.D.Mich.1972). *But cf. Mamber v. Second Federal Savings & Loan Association of Boston*, 275 F.Supp. 170 (D.Mass.1967) (Home Owners Loan Act is not an act regulating commerce, but was passed under the "general welfare" clause). As defendant admits, the real issue here is not jurisdiction, but whether plaintiffs state a cause of action.

The threshold question is whether to imply a private cause of action for violations of the regulations of the Federal Home Loan Bank Board (FHLBB), 12 C.F.R. 545.-6–11. Most courts that have considered this question in similar cases have concluded that private parties should have the right to sue for violations of regulations governing the terms of mortgage loans by federal savings and loan associations. *City Federal Savings & Loan Association v. Crowley, supra*, at 651–54; *Gibson v. First Federal Savings & Loan Association*, 347 F.Supp. 560, 565–66 (E.D.Mich.1972). While this Court would be similarly disposed to imply a private cause of action, I need not conclusively resolve this issue, since plaintiffs' claims of regulatory violations are without merit. *See Goldman v. First Federal Savings & Loan Association, supra*, at 1250, n.6 (assuming a private cause of action and rejecting plaintiff's claim that the association's practice constituted a prohibited "prepayment penalty"). I will, therefore, assume that a private cause of action may be implied here, and will examine the plaintiffs' regulatory claims. As indicated above, three regulatory violations are alleged: raising the interest rates during the term of the loan, failing to give written notice at the time of the increase that plaintiffs could prepay the entire amount, and imposing late charges that did not comply with 12 C.F.R. 545.6–11(d).

■ Plaintiffs have cited current regulations to support their first claim regarding interest increases. As defendant points out, however, the transaction would be governed by then-applicable regulations. That regulation, far less detailed than current provisions, required only:

§ 141.14 *Installment loan.* The term "installment loan" means any loan repayable in regular periodic payments, equal or unequal, sufficient to retire the debt, interest and principal, within the contract period: *Provided, however*, That the loan contract shall not require any subsequent periodic principal payment to be greater than any previous periodic principal payment.

The parties agree that "the language speaks for itself" (Plaintiffs' Second Supplementary Memorandum, p. 10), but they disagree as to what it says. The Court has read, reread, and pondered the plaintiffs' memorandum but fails to understand how this language can be interpreted to prohibit an increase in the interest rate. It prohibits only an increase in principal, and is silent as to interest increases. The Court's reading of this provision is bolstered by a FHLBB Memorandum, T–56, which indicates that:

It has been determined, with the concurrence of the Board, as to:

*Loans made prior to April 10, 1972*, that Federal associations may, within the original loan term, exercise their contractual right to increase the interest rate of a loan under an escalation clause contained in the loan contract or other debt instrument. In the alternative, the monthly payment may be increased and maturity of the loan may be extended up to the maximum term permissible for the type of loan involved to the extent necessary to absorb the increase in interest charged.

Accordingly, this Court can see no basis for plaintiffs' claim that the interest rate increase violated federal law. This allegation is dismissed.

■ Plaintiffs do not cite any regulation that requires written notice before imposing an interest rate increase under an escalation clause.[3] Therefore, this claim is also dismissed.

■ Plaintiffs' allegation that Warwick violated the regulation regarding late charges, 12 C.F.R. 545.6–11(d)[4] is more difficult to resolve. Their position is that their payments were not really late because the bank did not notify them of increased tax charges (plaintiffs allege bank received tax bills directly), and thus "the condition precedent to collecting a late charge as per 12 C.F.R. 545.6–11(d), were [sic] never met." (Plaintiffs' Supplementary Memorandum p. 4). Two possible readings of the regulation would support their position. First, the regulation authorizes late charges only on a "delinquent periodic installment loan." Where the loan is not truly delinquent, no late charges are authorized and an association has no power to assess one. Alternatively, any violation of the contractual provision for late charges could be said to violate the regulation, since "assessment, imposition, and collection of a late charge . . . shall be exclusively governed by the terms of the contract . . . ." The Court has been unable to find any consideration of this regulation by other courts, and

it is not easy to interpret it. Taken as a whole, the regulation seems to indicate a strong intent to leave late charges to the contract, and not to detailed federal supervision. Accordingly, the Court feels that a late charge imposed in violation of the contract does not rise to a regulatory violation. While the regulation may impose some limits on what constitutes a late charge (and in some cases a private action may be appropriate), the present controversy does not involve a definitional dispute about whether payment under particular circumstances is "late" or "delinquent," as used in the regulation. Instead, the dispute centers on whether the defendant had a contractual obligation to notify plaintiffs of tax increases, and whether it failed to do so. No interpretation or application of 545.6–11(d) is called for in resolving such a question. Accordingly, the Court believes that plaintiffs have failed to allege a violation of 12 C.F.R. 545.6–11(d). The claim arising under this regulation is dismissed. If any relief is appropriate then it must be by way of a contract action.

The remaining claims are all basically contractual. Plaintiffs maintain that these claims are to be determined according to federal common law. Federal courts have jurisdiction over such claims under 28 U.S.C. § 1331, since they are widely considered federal question cases. *Illinois v. Milwaukee*, 406 U.S. 91, 100, 92 S.Ct. 1385, 31 L.Ed.2d 712 (1972). Defendant has chal-

---

**3.** Present regulations do not speak directly to this point, since an interest rate escalation clause is no longer allowed. The Court assumes, therefore, that any governing regulation would be an old one.

**4.** (d) *Late charges.* A Federal association continues to have the power to include, as a matter of contract between it and the borrower, a provision in its loan instruments for assessment, imposition, and collection of a late charge respecting payment of any delinquent periodic installment loan. Such contractual late charge may be in the form of an increased rate of interest on the unpaid balance of the loan (or a part thereof) for the period of delinquency, a percentage of the delinquent periodic installment payment (or a part thereof), a fixed dollar amount, or such other form as may be necessary and appropriate for full protection of

the association. The contractual late charge, regardless of its form, shall not be considered as interest to the association. Late charges shall not be deducted by a Federal association from regular periodic installment payments on the loan, but rather collected as such from the borrower. Except as provided in paragraph (e) of this section with respect to loans made after July 31, 1976, on the security of a home occupied or to be occupied by the borrower, assessment, imposition, and collection of a late charge respecting any loan made by a Federal association shall be exclusively governed by the terms of the contract between such association and the borrower. Collection of a late charge shall not impair, alter, or abrogate any other right of the Federal association granted by contract or law respecting delinquent installment payments.

lenged the plaintiffs' assertion that their claim amounts to $10,000, as required by § 1331. The plaintiffs have sworn—by affidavit—that their losses amount to $10,047. They have not broken down this amount to indicate which alleged violations resulted in which losses. The plaintiffs have also submitted bank records relating to their loans and suggest comparing these documents with their own calculations of what the proper figures should have been. These thirty-five pages of documents are far from illuminating. As far as the Court can determine, comparing the "bottom lines" (the last balances) on the loans yields possible damages of just under $2000. The Court admits, however, that it may have mistakenly interpreted these cryptic records.

■ The plaintiffs' burden in establishing that the jurisdictional amount is met is not very rigorous. They must show that "it does not appear to a legal certainty that its claim is for less than the jurisdictional amount." 14 Wright & Miller, Federal Practice and Procedure, § 3702, p. 373. This standard does not mean that plaintiffs can prevail merely by presenting a confused and sketchy analysis of their damages. In this case, however, we will give the plaintiffs the benefit of the doubt. This Court hesitates to assume jurisdiction too readily, thus reaching the merits prematurely, but in light of the disposition of the case, further argument and study of the jurisdictional amount would merely waste the Court's time.[5] I will unwillingly assume, therefore, that the plaintiffs have established the jurisdictional amount, and will move on to consider whether the allegations are to be determined according to federal common law.

To support their contention that federal common law applies, plaintiffs cite *City Federal Savings and Loan Association v. Crowley*, 393 F.Supp. 644 (E.D.Wis.1975) and *Rettig v. Arlington Heights Federal Savings and Loan Association*, 405 F.Supp. 819 (N.D.Ill.1975). It is true that *City* held that federal common law controlled a suit between an association and its former officers and directors since the issues arose from a federal regulatory program. In *City*, however, the Court repeatedly stressed that the issues involved the *internal* affairs of the federal savings and loan association. In fact, the Court in *City* specifically distinguished fiduciary duties to borrowers (at issue in the present suit) from issues of internal management (at issue in *City*). Similarly, *Rettig* applied federal common law to matters dealing with the *internal management* of a federal savings and loan association. These cases, therefore, are of only limited precedential value in determining whether the contractual issues raised by the DeSimones are governed by federal common law or state law.

■ The internal management of a federal savings and loan association is of far greater federal concern than are the purely contractual issues raised by the DeSimones. While this Court arguably has the power to construe the scope of federal common law broadly enough to include the plaintiffs' present contract claims, I decline to do so. I am not convinced that such issues bear heavily on the federal regulatory program. *See United States v. Little Lake Misere Land Co., Inc.*, 412 U.S. 580, 93 S.Ct. 2389, 37 L.Ed.2d 187 (1973). Nor is there any strong federal interest in national uniformity. *See Miree v. DeKalb County*, 433 U.S. 25, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977) (citing *Clearfield Trust v. United States*, 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838 (1943)); *Kohr v. Allegheny Airlines, Inc.*, 504 F.2d 400 (7th Cir. 1974). Indeed, the DeSimones' claims appear to be contract issues of the purest kind; the mere fact that one party is an institution created and governed by federal law seems an insufficient basis to develop and apply federal common law. Were we to hold otherwise, all routine disputes over $10,000 arising out of mortgages issued by federal savings and loan associations, including defaults, would become federal question cases. I question the wisdom of this result, and doubt that

---

5. The Court is regretfully aware that such leniency may well encourage obfuscating briefs from counsel. I can only hope that lawyers will not depend on such largesse in the future.

Congress intended it. Accordingly, I hold that the plaintiffs have failed to state a cause of action under federal common law, and their contract claims must be dismissed.

So Ordered.