McNEILL, Trustee, Plaintiff and Appellant, v. JACOBSON, Defendant: BELLE CITY SAVINGS & LOAN ASSOCIATION, Defendant and Respondent. [Case No. 64.]

McNEILL, Trustee, Plaintiff and Appellant, v. JACOBSON, Defendant: RACINE SAVINGS & LOAN ASSOCIATION, Defendant and Respondent. [Case No. 65.]

McNEILL, Trustee, Plaintiff and Appellant, v. JACOBSON, Defendant: FIRST FEDERAL SAVINGS & LOAN ASSOCIATION, Defendant and Respondent. [Case No. 66.]

*Nos. 64–66. Argued June 6, 1972.—Decided June 30, 1972.*
(Also reported in 198 N. W. 2d 611.)

256

For the appellant there were briefs by *Jeknavorian, Ludwig & Shlimovitz* and *R. Arthur Ludwig,* all of Milwaukee, and oral argument by *R. Arthur Ludwig.*

For the respondents there was a brief by *LaFrance, Thompson, Evans, Dye, Hostak & Clack* and *William E. Dye,* all of Racine, for the Belle City Savings & Loan Association; and by *Brown, Black & Riegelman* and *Harley Brown,* all of Racine, for the Racine Savings & Loan Association; and by *Heft, Coates, Heft, Henzl & Bichler* and *Robert R. Henzl,* all of Racine, for the First Federal Savings & Loan Association of Racine, and oral argument by *Robert R. Henzl.*

HEFFERNAN, J. Putting aside peripheral questions, which would be important and perhaps controlling under other circumstances, but one issue need be resolved to determine this appeal. The question is simply whether the regulations of the state of Wisconsin and the regulations of the United States Government which limit the aggregate amount of lending permitted to a single borrower create a cause of action for the benefit of the trustee or creditors of a bankrupt who has borrowed in excess of the permitted amount.

As we must where there is a demurrer, we assume that the facts pleaded are true. The question is whether the facts stated, as a matter of law, are sufficient to constitute a cause of action. For the purpose of this appeal we assume, without deciding the question, that the trustee in bankruptcy assumes not only the rights of the bankrupt but of the bankrupt's creditors.

The heart of the plaintiff's cause of action is therefore that a creditor of a bankrupt has a private cause of action to recover the charges made by a savings and loan institution when that loan is issued in violation of the applicable laws and regulations limiting the amount one lender can loan to one borrower. The applicable state regulations on mortgage loan limitations appear in sec. 215.21 (5) (a) and (b), 1967.[1] The applicable federal regulations appear in 12 C. F. R., sec. 563.9–3 (a) and (b), p. 347.[2]

---

[1] "(5) MAXIMUM AMOUNT OF LOANS TO ONE BORROWER. (a) The aggregate of loans that an association may make to any one borrower shall be limited by the total amount of its assets as follows: $5,000, if the assets are less than $50,000; $7,500, if the assets range from $50,000 to $100,000; $10,000, if the assets range from $100,000 to $200,000; $20,000, if the assets range from $200,000 to $500,000; $25,000, if the assets range from $500,000 to $1,000,000. The aggregate of loans that an association may make to any one borrower, when the total assets exceed $1,000,000, shall be subject to such limits as determined and prescribed by the commissioner and advisory committee but shall not be in excess of 10 per cent of savings capital or the total of general reserves and undivided profits, whichever is the lesser.

"(b) The aggregate of loans to any one borrower shall consist of any loans made directly to him and to any corporation of which he is an officer, director or shareholder."

[2] "Section 563.9–3 Loans to one borrower.

"(a) Definition of terms. For the purposes of this section the term 'one borrower' means (1) any person or entity that is, or that upon the making of a loan will become, obligor on a loan on the security of real estate, (2) nominees of such obligor, (3) all persons, trusts, partnerships, syndicates, and corporations of which such obligor is a nominee or a beneficiary, partner, member, or record or beneficial stockholder owning 10 percent or more of the capital stock, and (4) if such obligor is a trust, partnership, syndicate, or corporation, all trusts, partnerships, syndicates, and corporations of which any beneficiary, partner, member, or record or beneficial stockholder owning 10 percent or more of the capital stock, is also a beneficiary, partner, member, or record or beneficial stockholder owning 10 percent or more of the capital stock of such obligor; and the term 'total balances of all outstanding loans'

From the face of these statutes it is apparent that their purpose is to protect the financial integrity of the lending institution. They are designed to conserve and protect the assets of the associations' members and depositors. The trial judge correctly stated that the purpose of these regulations is to implement the age-old admonition against "putting all your eggs in one basket." The statutes and regulations spell out no explicit cause of action in favor of the creditors of a bankrupt against a lending institution that has violated these regulations. If, however, the entire context of a scheme of regulations can be reasonably construed to create a cause of action in a third party, a cause of action may arise by implication. *See Implying Civil Remedies from Federal Regulatory Statutes*, 77 Harv. L. Rev. (1963–64), 285, 289–296. Whether such a statute or regulation can be so construed is a matter of determining legislative intent. We accept the statement appearing in 50 Am. Jur., *Statutes*, p. 582, sec. 586:

"The legislative intent to grant or withhold a private right of action for the violation of a statute, or the

means the original amounts loaned by an insured institution plus any additional advances and interest due and unpaid less repayments and participating interests sold and exclusive of any loan on the security of real estate the title to which has been conveyed to a bona fide purchaser of such real estate.

"(b) *Limitations.* An insured institution shall not make a loan on the security of real estate to one borrower, as defined in paragraph (a) of this section, if the sum of (1) the amount of such loan and (2) the total balances of all outstanding loans on the security of real estate owed to such institution by such borrower exceeds an amount equal to 10 percent of such institution's withdrawable accounts or an amount equal to the sum of such institution's nonwithdrawable accounts, surplus, undivided profits, and reserves for losses, whichever amount is less: *Provided,* That, notwithstanding any other limitation of this sentence, any such loan may be made if the sum of subparagraphs (1) and (2) of this paragraph does not exceed $100,000 or if such loan is secured by a first lien on low-rent housing."

failure to perform a statutory duty, is determined primarily from the form or language of the statute. The nature of the evil sought to be remedied, and the purpose it was intended to accomplish, may also be taken into consideration. In this respect, the general rule is that a statute which does not purport to establish a civil liability, but merely makes provision to secure the safety or welfare of the public as an entity, is not subject to a construction establishing a civil liability."

A somewhat similar rationale has been followed in a series of Wisconsin cases where it was claimed that a safety statute created a cause of action in a private individual. This court has consistently followed the rule that a cause of action will not be implied to protect an interest other than the one specifically protected by the statute. *See Blanchard v. Terpstra* (1967), 37 Wis. 2d 292, 298, fn. 1, 155 N. W. 2d 156.

The regulatory schemes of the Wisconsin statutes and of the federal code were designed to protect depositors and not borrowers and their creditors. No cause of action on behalf of the trustee in bankruptcy, in the instant case acting on behalf of the bankrupt and his creditors, can be reasonably implied. As the trial judge pointed out, permitting third persons a cause of action where there has been an excessive loan to a single borrower would merely result in the additional depletion of the depositors' assets that the complex regulatory schemes of both the state and the federal government seek to preserve.

The cases upon which the plaintiff relies, *Green v. Jones* (1964), 23 Wis. 2d 551, 128 N. W. 2d 1; *Chauffeurs, Teamsters & Helpers v. WERC* (1971), 51 Wis. 2d 391, 187 N. W. 2d 364, are not in point. In each of those cases this court found that the express purpose of the statute (sec. 103.50, Stats.) was to insure that laborers were paid an adequate wage. Having determined the express purpose of the statute, the court concluded

that a cause of action was conferred upon the laborer because it was his right to wages that the statute explicitly was designed to protect.

We, however, must also confess the same bafflement that was expressed by the trial court in respect to the claim for unjust enrichment. From the face of the complaint, it cannot be said that the savings and loan associations in question were the recipients of any more than the fees that were used to pay out-of-pocket expenses. Why this reimbursement constituted unjust enrichment is unclear. The facts of the complaint are not sufficient to show that the fees thus retained come within the rule stated in *Kelley Lumber Co. v. Woelfel* (1957), 1 Wis. 2d 390, 392, 83 N. W. 2d 872:

" 'Acceptance and retention . . . of such benefit, under circumstances such that it would be inequitable to retain the benefit without payment of the value thereof.' "

We conclude that the Wisconsin statutes and the federal regulations confer no private right of action upon the plaintiff herein, nor does the complaint satisfy the requirements necessary to sustain the cause of action for unjust enrichment. *Kelley Lumber Co., supra.*

*By the Court.*—Order affirmed.