# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2017AP2352 |

| | |
|---|---|
| COMPLETE TITLE: | DSG Evergreen Family Limited Partnership, Plaintiff-Appellant-Petitioner, v. Town of Perry, Defendant-Respondent. |

REVIEW OF DECISION OF THE COURT OF APPEALS
Reported at 385 Wis. 2d 514, 925 N.W.2d 782
(2019 – unpublished)

| | |
|---|---|
| OPINION FILED: | February 27, 2020 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | November 4, 2019 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit Court |
| COUNTY: | Dane |
| JUDGE: | Richard G. Niess |

JUSTICES:
KELLY, J., delivered the majority opinion for a unanimous Court.
NOT PARTICIPATING:

ATTORNEYS:

For the plaintiff-appellant-petitioner, there were briefs filed by *Matthew J. Fleming* and *Murphy Desmond S.C.*, Madison. There was an oral argument by *Matthew J. Fleming*.

For the defendant-respondent, there were briefs filed by *Mark J. Steichen* and *Boardman & Clark LLP,* Madison. There was an oral argument by *Mark J. Steichen*.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2017AP2352
 (L.C. No. 2015CV65)

STATE OF WISCONSIN          :          IN SUPREME COURT

**DSG Evergreen Family Limited Partnership,**

**Plaintiff-Appellant-Petitioner,**

**FILED**

v.

**FEB 27, 2020**

**Town of Perry,**

Sheila T. Reiff
Clerk of Supreme Court

**Defendant-Respondent.**

DANIEL KELLY, J. delivered the majority opinion for a unanimous Court.

REVIEW of a decision of the Court of Appeals. *Reversed and remanded for further proceedings consistent with this opinion.*

¶1    DANIEL KELLY, J.    The Town of Perry (the "Town") acquired a portion of property belonging to DSG Evergreen Family Limited Partnership ("DSG") through its power of eminent domain. In exercising that power, the Town committed itself to building a replacement road over part of the acquired property. DSG says the Town failed to build the road to the standards required by either the condemnation petition or Wis. Stat. § 82.50(1) (2017-18),[1]

---

[1] All subsequent references to the Wisconsin Statutes are to the 2017-18 version unless otherwise indicated.

which applies to the construction of town roads. It seeks a declaratory judgment establishing the Town's road-building obligations or, in the alternative, damages sufficient to allow it to build the promised road. The Town says the claim preclusion doctrine bars DSG from raising its claims in this case. It also says that, in any event, DSG lacks a cognizable claim because the statutes on which it relies do not create a private cause of action.

¶2 We conclude that claim preclusion does not bar DSG's claim that the Town did not build the replacement road to the standards required by the condemnation petition. However, we also conclude that Wis. Stat. § 82.50(1) does not impose obligations on the Town that are susceptible to a declaration of rights, nor does it create a private cause of action by which DSG can recover damages for the alleged failure to construct a proper road. Therefore, we reverse the decision of the court of appeals and remand to the circuit court for further proceedings on this claim.[2]

## II. BACKGROUND

¶3 DSG used to own approximately 92 acres of land in the Town of Perry. Now it owns just over 80 acres because the Town used its condemnation power to take the difference (12.13 acres) to create what came to be known as the Hauge Log Church Historic District Park (the "Park"). Prior to the condemnation, County

---

[2] This is a review of an unpublished decision of the court of appeals, DSG Evergreen Family Ltd. P'Ship v. Town of Perry, No. 2017AP2352, unpublished slip op. (Wis. Ct. App. Dec. 20, 2018), which affirmed the judgment of the Dane County Circuit Court, the Honorable Richard G. Niess presided.

Highway Z ran along the eastern edge of DSG's property.  DSG had built a field road off of Highway Z to access its land for agricultural purposes and, eventually, to reach a residence and farm building it anticipated building.[3]  This was the only means of accessing the property.  Now, after the condemnation, the Park runs along the eastern edge of DSG's property instead of County Highway Z.  To prevent DSG's property from being landlocked, the Town's condemnation petition promised to grant DSG a permanent access easement over a new field road it committed itself to building over the northern-most part of the Park.  Specifically, the condemnation petition said:

> The Town will replace the existing field road on the 12.13 acre parcel to be acquired with a new field road from [the county highway] along the northern boundary of the Hauge Church Park boundary to the western boundary of the proposed Park in order to provide access to the Owner's other lands in the Town of Perry and for park-related purposes subject to the Hauge Church Park Regulations.  <u>This field road will be built to the same construction standards as the existing field road.</u>

(Emphasis added.)

¶4  The Town's efforts to obtain DSG's property spawned a significant amount of litigation.  To identify the issues already litigated and——by process of elimination——the issues still potentially subject to litigation, we must survey each of the cases

---

[3] Several years before the present proceedings, DSG obtained an "Agricultural Non-Controlled Access" permit which allowed it to access the parcel for agricultural purposes.  Shortly afterwards it applied for and obtained a "Residential (single-family) Non-controlled Access" permit, allowing DSG to access the parcel from the county highway for residential purposes.  At the time of the condemnation, DSG used the road only for agricultural purposes.

3

between the Town and DSG related to the acquisition of this property.

A. The Right-to-Take Case

¶5    The Town attempted to negotiate a voluntary sale of DSG's property, as required by statute, but was unsuccessful. See Wis. Stat. § 32.06(2a). So the Town took the next step in the exercise of its eminent domain power——it served on DSG a "jurisdictional offer." § 32.06(3). A jurisdictional offer describes, amongst other subjects, the property the authority intends to acquire, the amount of compensation the authority is offering for the acquisition, and the owner's right to challenge both the exercise of eminent domain and the amount of compensation. See Wis. Stat. §§ 32.06(3) and 32.05(3).

¶6    After receiving a jurisdictional offer, the owner may bring suit in circuit court challenging the condemnor's right to acquire his property. Wis. Stat. § 32.06(5). DSG exercised this right, claiming a discrepancy between the legal description in the jurisdictional offer and the statutorily-required appraisal upon which the offer must be based (the "Right-to-Take Case").[4] § 32.06(2)(b). The circuit court dismissed DSG's claim, and the court of appeals affirmed. See Town of Perry v. DSG Evergreen Family Ltd. P'Ship, No. 2008AP163, unpublished slip op. (Wis. Ct. App. Apr. 23, 2008).

_____

[4] The jurisdictional offer DSG challenged was actually the "Fourth Amended Jurisdictional Offer," but because the prior offers are immaterial to this case, we will make no distinction between them.

¶7    The Town and DSG were still at loggerheads after resolution of the Right-to-Take Case with respect to the amount to be paid for the property.  Because DSG would not accept the amount indicated in the jurisdictional offer, the Town commenced suit to authoritatively establish the amount due to DSG for acquisition of the property, an amount known as "just compensation" (the "Just Compensation Case").  Wis. Const. art. I, § 13 ("The property of no person shall be taken for public use without just compensation therefor.").  The matter proceeded to a jury trial.  In the present case, the parties stipulated that the only issue presented to the jury in the Just Compensation Case was the amount owed to DSG for the property rights the Town was acquiring:

> The essential issue tried in the just compensation trial was the determination of the fair market value of the entirety of DSG's property before the Taking and the fair market value of DSG's property after the Taking assuming completion of the project for which the Taking occurred, including the construction of the new field road under the terms of the Petition.[5]

¶8    In establishing the just compensation due to DSG, the jury had to assume, as a practical matter, that the Town would

---

[5] This is the calculation prescribed by Wis. Stat. § 32.09(6):

> In the case of a partial taking of property other than an easement, the compensation to be paid by the condemnor shall be the greater of either the fair market value of the property taken as of the date of evaluation or the sum determined by deducting from the fair market value of the whole property immediately before the date of evaluation, the fair market value of the remainder immediately after the date of evaluation, assuming the completion of the public improvement[.]

complete the new field road as described in the condemnation petition because the Town could not start its construction until after the trial was over and the required compensation paid.[6] Nevertheless, DSG expressed doubt about the Town's ability to build the new field road as indicated in the condemnation petition. It introduced an engineering report to that effect, which said:

> Neither a public road nor a private driveway meeting all applicable Town, County, State and Federal requirements can be constructed entirely within the easement. In addition, a private driveway constructed within the easement is not equivalent to the existing farm road because of inferior intersection sight distance and maximum slope characteristics.

DSG did not, however, offer any testimony with respect to the report's contents, nor did the report go to the jury.

¶9 The jury returned a verdict favorable to DSG, awarding it compensation greater than the Town's jurisdictional offer.[7] The Town then obtained title to the property by paying DSG the required amount and recording the award with the register of deeds.

## C. The Present Case

¶10 The Town started work on the promised road after obtaining title to the property. Almost immediately after it was

---

[6] Wisconsin Stat. § 32.06(9)(b) (The condemnor "shall within 70 days after the date of filing of the commission's award, pay the amount of the award . . . to the owner and take and file the owner's receipt therefor with the clerk of the circuit court . . . . Title to the property taken shall vest in the condemnor upon the filing of such receipt or the making of such payment.").

[7] The court of appeals affirmed the jury's verdict. See DSG Evergreen Family Ltd. P'Ship v. Town of Perry, No. 2011AP492, unpublished slip op. (Wis. Ct. App. Dec. 6, 2012).

6

done, DSG notified the Town that it was not suitable for heavy farm machinery.  So the Town performed some remedial work on the road and brought it into compliance with the standards described in the Town's Driveway Ordinance.  See Perry, Wisconsin, Driveway Ordinance (2000).  The Town subsequently adopted a resolution establishing the road as the Hauge Parkway (the "Parkway") and declaring the road open for the "the benefit of the public, adjacent property owners and for park related purposes" (the "Resolution").

¶11  But DSG claims the road still does not meet the standards to which the Town committed itself.  The condemnation petition says the new field road would be "built to the same construction standards as the existing field road."  DSG says it built its field road to meet town road standards (as described in Wis. Stat. § 82.50), standards it says the new road doesn't meet because it is too narrow, too steeply sloped, lacks an emergency turn-out, lacks a storm-water retention pond, and lacks a place to turn around.

¶12 Because of the road's perceived inadequacies, DSG took the Town back to the circuit court.  Its complaint sought a judgment declaring that the Town "is obligated to improve and maintain [the new field road] to County and Town standards for a Town road."  Alternatively, it requested over $288,000 so that it could improve the new field road to the standards it claims the Town promised to satisfy.

¶13  DSG asked for summary judgment, arguing (in part) that by adopting the Resolution, the Town became subject to Wis. Stat.

7

§ 82.03,[8] thereby imposing on it an obligation to improve the Parkway to the town road standards described by Wis. Stat. § 82.50. The Town responded with a summary judgment motion of its own in which it sought a ruling that, regardless of what §§ 82.03 or 82.50 might require, they do not create a private cause of action enforceable by DSG. The circuit court agreed with the Town, and so granted judgment against DSG on that issue.

¶14 The case continued with respect to the scope of the Town's road-building obligations imposed by the jurisdictional offer. It ended when the circuit court concluded that claim preclusion barred DSG's claim. It said "the before-and-after just compensation analysis necessarily placed the issue of construction standards for the new field road front and center in the prior action." Therefore, it concluded that "DSG could have vigorously contested the replacement road promised by the Town" in the Just Compensation Case, but didn't. The court of appeals affirmed. It reasoned that "DSG knew before and at the time of the condemnation trial that the Town could not comply with the interpretation of the condemnation petition that DSG advocates in this lawsuit." DSG Evergreen Family Ltd. P'Ship v. Town of Perry, No. 2017AP2352, unpublished slip op., ¶42 (Wis. Ct. App. Dec. 20, 2018). Therefore, the court of appeals concluded that "[u]nder claim preclusion principles, DSG cannot now request relief that the Town is not complying with the condemnation petition when DSG failed to

---

[8] Wisconsin Stat. § 82.03(1)(a) provides, in relevant part, that: "[t]he town board shall have the care and supervision of all highways under the town's jurisdiction[.]"

8

raise that issue in the previous lawsuit." Id. We granted DSG's petition for review.

## II. STANDARD OF REVIEW

¶15 We review the circuit court's grant of partial summary judgment de novo. Leicht Transfer & Storage Co. v. Pallet Cent. Enterprises, Inc., 2019 WI 61, ¶8, 387 Wis. 2d 95, 928 N.W.2d 534 ("We review the disposition of a motion for summary judgment de novo, applying the same methodology the circuit courts apply." (cited source omitted)). While our review is independent from the circuit court and court of appeals, we benefit from their analyses. See Preisler v. Gen. Cas. Ins. Co., 2014 WI 135, ¶16, 360 Wis. 2d 129, 857 N.W.2d 136. Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Wis. Stat. § 802.08(2); see also Columbia Propane, L.P. v. Wis. Gas Co., 2003 WI 38, ¶11, 261 Wis. 2d 70, 661 N.W.2d 776 (quoting and applying Wis. Stat. § 802.08(2) (2001-02)).

¶16 We also review the circuit court's decision with respect to claim preclusion de novo. "Whether claim preclusion applies under a given factual scenario is a question of law we review independently of the determinations rendered by the circuit court and court of appeals." Teske v. Wilson Mut. Ins. Co., 2019 WI 62, ¶20, 387 Wis. 2d 213, 928 N.W.2d 555 (cited source omitted).

## III. ANALYSIS

¶17 DSG asks us to send this case back to the circuit court so that it may continue litigating the three claims described in its Complaint. The claims include two requests for a declaration of rights and one alternative claim for damages. The first declaration DSG seeks is that the condemnation petition requires the Town to upgrade the Parkway to meet the standards to which DSG had built its original field road (the "Petition Standard Claim"). DSG also requests a declaration that Wis. Stat. § 82.50 requires the Town of Perry to upgrade the Parkway to the standards of a town road (the "Town Road Claim"). As an alternative to declaratory relief, DSG asks for damages sufficient to allow it to satisfy the Town's obligation to improve the Parkway (the "Damages Claim"). The Town says the doctrine of claim preclusion bars us from entertaining DSG's case at all.[9] It also denies that § 82.50 creates a private cause of action enforceable against the Town. We conclude that claim preclusion does not bar any of DSG's claims. However, we also hold that DSG is not entitled to declaratory relief with respect to the Town Road Claim, and that § 82.50 does not create a private cause of action capable of supporting the Damages Claim. Therefore, we reverse the decision of the court of appeals and remand the matter to the circuit court for further proceedings on DSG's Petition Standards Claim. We will address

---

[9] Some of our older decisions refer to the doctrine of claim preclusion as res judicata. The concepts are the same, but "[t]he term claim preclusion replaces res judicata" in our more recent decisions. N. States Power Co. v. Bugher, 189 Wis. 2d 541, 550, 525 N.W.2d 723 (1995).

10

claim preclusion first, and then the Town's argument that § 82.50 cannot support DSG's Town Road Claim or its Damages Claim.

## A.  Claim Preclusion

¶18  The claim preclusion doctrine ensures that parties do not continue litigating claims that a court has already authoritatively resolved. Kruckenberg v. Harvey, 2005 WI 43, ¶19, 279 Wis. 2d 520, 694 N.W.2d 879 ("The doctrine of claim preclusion provides that a final judgment on the merits in one action bars parties from relitigating any claim that arises out of the same relevant facts, transactions, or occurrences." (cited sources omitted)).  This doctrine applies upon satisfaction of the following elements:

> (1) identity between the parties or their privies in the prior and present suits; (2) prior litigation result[ing] in a final judgment on the merits by a court with jurisdiction; and (3) identity of the causes of action in the two suits.

Id., ¶21 (quoted source omitted).  The rule applies even if the claim was not actually litigated, so long as the party could have raised it.  Teske, 387 Wis. 2d 213, ¶43 (The preclusive effect applies to matters "which might have been litigated in the former proceedings." (quoted source omitted)).  The doctrine developed because we recognize that "endless litigation leads to chaos; that certainty in legal relations must be maintained; that after a party has had his day in court, justice, expediency, and the preservation of the public tranquility requires that the matter be at an end." Kruckenberg, 279 Wis. 2d 520, ¶20 (quoted source omitted).

¶19 DSG agrees that its circumstances satisfy the first two elements of the claim preclusion test,[10] so the only issue here is whether the third element of the claim preclusion test is satisfied——to wit, whether there is an "identity of the causes of action" between this case and a prior case. See Kruckenberg, 279 Wis. 2d 520, ¶24. Therefore, our analysis must compare DSG's road-related claims in this case against those it either actually litigated, or could have litigated, during the Right-to-Take Case or the Just Compensation Case. We conclude that there is no "identity of the causes of action" between the claims in this case and those that were, or could have been, litigated in either of the prior cases.

¶20 We analyze claim preclusion issues using the transactional approach, which "reflects the expectation that parties who are given the capacity to present their entire controversies shall in fact do so." Teske, 387 Wis. 2d 213, ¶31. This requires that "all claims arising out of one transaction or factual situation are treated as being part of a single cause of action and they are required to be litigated together." Id. (quoting A.B.C.G. Enters., Inc. v. First Bank Se., N.A., 184 Wis. 2d 465, 480-81, 515 N.W.2d 904 (1994)); see also N. States Power Co. v. Bugher, 189 Wis. 2d 541, 555, 525 N.W.2d 723 (1995) (The "number of substantive theories that may be available to the

---

[10] That is, DSG agrees there is an identity of parties between this case and both the Right-To-Take Case and the Just Compensation Case, and it agrees the two prior cases concluded with judgments on the merits.

plaintiff is immaterial——if they all arise from the same factual underpinnings they must all be brought in the same action or be barred from future consideration."). The operative question, therefore, is whether the Town's compliance with the road-building obligations imposed by the condemnation petition or state statutes was part of the same "transaction or factual situation" presented in the Just Compensation Trial.

¶21 Because we look at the "transaction or factual situation" of the prior cases, our analysis is necessarily context specific. When the allegedly claim-precluding case was part of a municipality's acquisition of property through its power of eminent domain, context becomes especially important. Typically, we expect parties to raise all claims arising out of the same "transaction or factual situation" in the same lawsuit because they are masters of their own pleadings and are free to draft an all-encompassing pleading. But parties to condemnation proceedings do not have the same degree of freedom, and that affects the types of claims a condemnation case may subsequently preclude. So we must examine the types of issues a property owner may raise in eminent domain-related litigation. Discerning the scope of those issues will inform our analysis of the preclusive effect of the Right-to-Take Case and the Just Compensation Case. We will address each case in turn.

### 1. The Right-to-Take Case

¶22 A right-to-take case is a limited purpose action. As its name implies, such a case addresses issues related to the condemnor's right to acquire the property:

13

> When an owner desires to contest the right of the condemnor to condemn the property described in the jurisdictional offer for any reason other than that the amount of compensation offered is inadequate, such owner may . . . commence an action in the circuit court of the county wherein the property is located, naming the condemnor as defendant.

Wis. Stat. § 32.06(5). This type of action does not reach the amount of compensation owed to the property owner if the condemning authority is successful. But it is the only opportunity to raise an objection to the authority's right to acquire the property. Id. ("Such action shall be the only manner in which any issue other than the amount of just compensation or other than proceedings to perfect title under ss. 32.11 and 32.12 may be raised pertaining to the condemnation of the property described in the jurisdictional offer.").

¶23 The Town argues that DSG could have asserted its claim regarding the sufficiency of the new field road in the Right-to-Take case. Specifically, it says:

> If at the time of the condemnation proceedings DSG had truly believed the promise [to build the new field road to the standards of the old field road] to be the vague, nebulous formulation . . . that DSG now contends, then DSG could have sought to have the Fourth Amended Jurisdictional Offer on which the petition is based declared void in part or in whole.

But DSG does not claim the Town's road-building obligation is vague or nebulous. To the contrary, it says the obligation "is unambiguous in that the 'standard' by which the new field road was to be measured is expressly identified as being the 'existing field road.'" Even if the Town had correctly characterized DSG's argument, it has provided no argument and cited no authority to

14

suggest that this is the type of issue a property owner must raise in a right-to-take case. And as the party advancing the claim preclusion argument, it is the Town's burden to prove its applicability. State ex rel. Barksdale v. Litscher, 2004 WI App 130, ¶13, 275 Wis. 2d 493, 685 N.W.2d 801 ("The burden of proving claim preclusion is upon the party asserting its applicability." (citing Alexopoulos v. Dakouras, 48 Wis. 2d 32, 37, 179 N.W.2d 836 (1970))).

¶24 The court of appeals' opinion provides no guidance on this question either. In fact, it did not substantively analyze the question at all because, it says, it accepted the Town's argument that DSG had conceded that it should have litigated the Town's road-building obligations in the Right-to-Take Case. But that is not actually what the Town argued, either in the court of appeals or here. The Town's argument is that DSG conceded that "if it was going to challenge the validity of the promise, a right-to-take challenge would have been the proper remedy." The statement of law lying at the heart of this alleged concession may or may not be correct, but it has nothing to do with this case. DSG is not challenging the validity of the Town's promise as contained in the jurisdictional offer. To the contrary, DSG affirmatively asserts its validity. Indeed, the whole point of this case is to compel the Town to make good on what DSG says is a valid and unambiguous promise——the construction of a replacement road in accordance with the standards identified in the petition (or, alternatively, to pay for the privilege of not doing so).

15

¶25 So the court of appeals' conclusion that DSG conceded it could have litigated its current issues in the Right-To-Take Case is incorrect. DSG conceded only that, if it were to have challenged the validity of the promise, it could have done so in the Right-To-Take case——an issue not raised in this case. And neither the Town nor the court of appeals has provided any authority or reasoning to suggest DSG could have litigated its current issues in the Right-to-Take Case (a necessary potentiality if the litigation is to have claim-preclusive effects). We will not develop the argument on the Town's behalf. State ex rel. Flynn v. Kemper Ctr., Inc., 2019 WI App 6 ¶30 n.12, 385 Wis. 2d 811, 924 N.W.2d 218 ("We will not abandon our neutrality to develop arguments for a party."). Consequently, the Town has failed to establish that the Right-to-Take Case bars DSG's current claim that the Town has not honored its road-building obligations.

2. The Just Compensation Case

¶26 The Town offers the Just Compensation Case as the second candidate for a bar against DSG's current claims. The issues a party may present in this type of case are even more constricted than that available in a right-to-take case. Consequently, so is its potential preclusive power. The condemnor pursues such a case when the owner does not accept the amount specified in the jurisdictional offer. It commences when the condemnor files a verified condemnation petition in the circuit court. Wis. Stat. § 32.06(7). The circuit court then assigns the matter to the chairperson of the county condemnation commissioners (the "Chairperson"). Id. The Chairperson selects three commissioners

16

whose task it is to "serve as a commission to ascertain the compensation to be made for the taking of the property or rights in property sought to be condemned . . . ." Wis. Stat. § 32.08(5). The statutes do not confer on the Commission authority to address any issue other than compensation. Upon the conclusion of its proceedings, the Commission "file[s] its award with the clerk of the circuit court, specifying therein the property or interests therein taken and the compensation allowed the owner . . . ." § 32.06(8). If either party is dissatisfied with the award, it may appeal the Commission's decision to the circuit court. § 32.06(10).

¶27 As with a right-to-take case (described above), the scope of this litigation is limited by statute. The case "proceed[s] as an action in said court subject to all the provisions of law relating to actions brought therein, but the only issues to be tried shall be questions of title, if any, as provided by ss. 32.11 and 32.12 and the amount of just compensation to be paid by condemnor . . . ." Wis. Stat. § 32.06(10). According to the statutes, therefore, the only issues the parties may litigate in a just compensation case are matters of title and the amount of money to be paid to the property owner.

¶28 But within that already narrow litigative universe, the statutes narrow the available issues even further by defining how the court (and the Commission) calculates the compensation due to the owner when, as here, there is a partial taking of property:

> In the case of a partial taking of property other than an easement, the compensation to be paid by the

17

condemnor shall be the greater of either the fair market value of the property taken as of the date of evaluation or the sum determined by deducting from the fair market value of the whole property immediately before the date of evaluation, the fair market value of the remainder immediately after the date of evaluation, <u>assuming the completion of the public improvement</u> . . . .

Wis. Stat. § 32.09(6) (emphasis added).  So not only must the circuit court follow a statutorily-prescribed method of calculating just compensation, it must also assume the completion of the public improvement when doing so.

¶29  Here, part of the public improvement was a new field road built to the same construction standards as the old field road.  The condemnation petition says:

> The Town will replace the existing field road on the 12.13 acre parcel to be acquired with a new field road from Highway Z along the northern boundary of the Hauge Church Park boundary to the western boundary of the proposed Park in order to provide access to the Owner's other lands in the Town of Perry and for park-related purposes subject to the Hauge Church Park Regulations. This field road will be built to the same construction standards as the existing field road.[11]

The purpose of the road was not just to provide DSG access to its remaining land.  It was also to serve the Park, as provided by the Hauge Church Park Regulations.  This had been the plan from the beginning of the project, as the Town made clear when it adopted the Resolution dedicating the new field road as the "Hauge Parkway."  The Resolution recites that "the Town has acquired real estate necessary for the Park, and the Plan provides for the establishment of a Town Park Road . . . ."  It goes on to say that

---

[11] This language is identical to the jurisdictional offer the Town presented to DSG before commencing the Just Compensation Case.

it constructed the Parkway "to provide access to the Park from County Highway Z for the benefit of the public, adjacent property owners and for park related purposes . . . ." The recitals conclude with the observation that "the final task is to formally dedicate the Parkway to establish a permanent right of way as contemplated by the Plan . . . ." The operative part of the Resolution said "Hauge Parkway shall hereby be dedicated to the public as a public Parkway and Town Park Road, with all rights of use to the public and the owners of the real estate contiguous to the Park, subject to the Town's regulation of establishment of driveways."

¶30 Based on this record, there can be no doubt that construction of the new field road——now known as the Hauge Parkway——was part of the public improvements anticipated by the condemnation petition. The parties' stipulation also bears witness to this conclusion. They agreed that "[t]he essential issue tried in the just compensation trial . . . assum[ed] completion of the project for which the Taking occurred, including the construction of the new field road under the terms of the Petition." (Emphasis added.) Therefore, Wis. Stat. § 32.09(6) required the circuit court to assume the new road would be constructed as provided by the condemnation petition. That is to say, even if DSG were convinced the Town would renege on its road-building obligation, or perform it inadequately or short of the required standards, it could not have litigated that issue in the Just Compensation Case, even had it so desired. As a matter of law, the court must assume that after completion of the public

19

improvements, DSG would have access to its property over a field road "built to the same construction standards as the existing field road."

¶31 That statutorily required assumption draws a sharp divide between claims DSG could and could not present in the Just Compensation Case. If DSG were to claim that the new field road——constructed to the same standards as the old field road——would diminish the value of its remaining property, it would have to pursue that claim in the Just Compensation Case. Calculating compensation for the diminished value of the owner's remaining property is the core purpose of such cases. The Just Compensation Case, therefore, would bar a claim based on the diminished value of the remaining property here.

¶32 But that is not DSG's claim. In this case, DSG does not claim that a road built to the standards required by the condemnation petition would diminish the value of its remaining property. Instead, it assumes the Just Compensation Case properly calculated the value of the property rights it lost——assuming the Town builds the required road.[12] Its claim here is that the Town

---

[12] In the Just Compensation Case, the Town argued on appeal that DSG's claim for increased compensation "was premised on its loss of reasonable access from County Highway Z to its remaining property after the partial taking . . . ." DSG Evergreen Family Ltd. P'ship, No. 2011AP492, unpublished slip op., ¶9. The court of appeals, however, said the Town "does not have a meritorious argument to present." Id., ¶14. The court of appeals recognized that DSG's actual argument was that its loss of frontage on a town road eliminated its ability to develop residential lots on the remainder of its property. Specifically, the court of appeals said:

failed to build the required road.  The purpose of this case is to compel the Town to fulfill the obligations that the circuit court, as a matter of law, had to assume the Town would honor when it calculated its award of just compensation.

¶33 With that understanding, the Town's argument that DSG already litigated the Town's faithfulness to its road-building obligation, or at least attempted to do so, in the Just Compensation Case does not follow either as a matter of logic or of law.  The Town's argument in this regard depends on the significance of the engineering report DSG introduced in the Just Compensation Case.  The Town paid particular attention to the report's introduction, which describes the scope of the ensuing analysis.  In relevant part it says:

> DSG responds on this issue that at trial it was DSG's theory, which DSG asserts appears to have been accepted by the jury, that through the partial taking the Town took title to all of DSG's frontage property along public roads, thereby depriving DSG of the valuable opportunity to create up to six residential lots on its property, due to Dane County zoning requirements for public road frontage to support residential lots.  DSG points to testimony from its engineer "that a town road meeting the required [county zoning] standards would not fit within the footprint of the easement given by the Petition."  Thus, DSG argues, authority cited by the Town regarding the quality and nature of changed access in eminent domain cases is irrelevant to this case, because DSG rested its claim on its alleged loss of the ability to use the remainder parcel for residential, as opposed to agricultural, purposes due to the alleged loss of road frontage as a result of the partial taking.

Id., ¶15.

The Town of Perry has proposed that the existing farm road be abandoned and a new access be constructed within the limits of a proposed 66' wide easement as located by the Town of Perry. Per the Town, the new access could consist of either a public road or a private driveway.

A public road was preliminarily designed to meet the applicable minimum standards. A private driveway was also preliminarily designed to meet applicable standards. The public road and private driveway designs were compared to the applicable Town, County, State and Federal standards. The private driveway was also compared to the existing farm road to see if it would provide an equivalent access.

The intent of this report is to provide details of the analyses performed and to show how the designs either met or failed to meet the required standards.

The report concludes that:

Neither a public road nor a private driveway meeting all applicable Town, County, State and Federal requirements can be constructed entirely within the easement. In addition, a private driveway constructed within the easement is not equivalent to the existing farm road because of inferior intersection sight distance and maximum slope characteristics.

The Town concludes that, because the report took issue with the Town's ability to build the road described in the condemnation petition, DSG actually litigated, or at least attempted to litigate, that issue.

¶34 What the engineering report actually did was opine on an issue the circuit court could not entertain. The report called into question whether the Town could build either a public road or a private driveway on the easement described in the condemnation petition that would conform to all applicable rules and

22

regulations.[13] But that question, as a matter of law, was beyond the circuit court's authority to hear. Wisconsin Stat. § 32.09(6) says the circuit court had to assume, contrary to the report's conclusion, that the Town <u>could and would</u> provide the road as described. That is to say, § 32.09(6) precluded DSG from litigating the question raised by the engineering report in the Just Compensation Case.[14] Even if submission of the report represents an attempt to do so, the claim preclusion doctrine does not recognize attempts at litigation. Instead, it asks only whether the final judgment in the Just Compensation Case actually adjudicated the claim, or could have adjudicated it had it been raised. See <u>Teske</u>, 387 Wis. 2d 213, ¶23. The Town does not argue the former, and the circuit court could not have done the latter without going beyond the boundaries set by § 32.09(6). Therefore, DSG's attempt to litigate an issue the circuit court was forbidden from entertaining (if that is what submission of the engineering report represents) cannot engage the claim preclusion doctrine.

---

[13] The report said the required road could not meet all of the applicable public road standards without "impacting area outside of the easement." That was problematic, the report reasoned, because "the area outside of the easement is not within the control of [DSG] and [DSG] does not have permission to use lands beyond the easement." The report concluded that building a private driveway was problematic for the same reasons.

[14] This is not to say that the circuit court could not have considered the engineering report as part of the Just Compensation Case. The report could have provided, for example, evidence bearing on the decreased value of DSG's remaining property——a proper consideration for a just compensation trial.

23

¶35 We conclude that neither the Right-to-Take Case nor the Just Compensation Case bars DSG's Petition Standards Claim, its Town Road Claim, or its Damages Claim.[15] But that is all we decide in this portion of our opinion. We note that the Town dedicated a significant amount of its brief to the construction standards required by the condemnation petition and how the new field road satisfies them. But that was the subject of the litigation the circuit court prematurely ended with its ruling on claim preclusion. Therefore, we express no opinion on the construction standards required by the condemnation petition, nor the current field road's compliance with them. We are simply concluding that claim preclusion does not serve as a bar to DSG's complaint.[16]

B. Declaration/Private Cause of Action

¶36 As an alternative to its claim that the Town failed to construct the new field road to the standards required by the condemnation petition (the Petition Standards Claim), DSG says the Town took on a statutorily-imposed obligation to improve the field road to town road standards when it dedicated it as the "Hauge Parkway" (the Town Road Claim). Specifically, it says this

---

[15] Because we hold that claim preclusion does not apply here, we need not reach DSG's alternative argument that we should create an exception to the claim preclusion doctrine for use in eminent domain cases.

[16] The Town says we can affirm the decision of the court of appeals on the basis that it satisfied its obligation to construct the new field road, arguing that this leaves nothing further to litigate. We disagree. To be sure, the Town did build a new field road, but whether that road satisfies the standards required by the condemnation petition is another question entirely.

24

obligation arises when a town "formally declares that a town road exists and improves that road, opening it for public travel . . . ." So it asked for a declaration that the Town must comply with its statutory obligation or, in the alternative, an award of damages sufficient to allow DSG to perform the construction the Town has refused to do. The Town says DSG is entitled to neither form of relief because it dedicated the Hauge Parkway as a "town parkway," not a "town road," so the standards applicable to town roads have no applicability. In any event, it says, the statute on which DSG relies creates no private cause of action against the Town.

¶37 As a preliminary matter, we must address some lack of precision in the way the parties have addressed this issue. The parties both bundled together DSG's alternative claims for relief and analyzed the resulting package according to a single rubric. They each used a different rubric, but neither of them accounted for the essential differences between the two types of claims. DSG, for example, says it may pursue declaratory judgment as well as its alternative demand for damages pursuant to the long-recognized right to compel a municipal entity or officer to perform its mandatory duties. Typically, such relief is available through a writ of mandamus. See Voces De La Frontera, Inc. v. Clarke, 2017 WI 16, ¶11, 373 Wis. 2d 348, 891 N.W.2d 803 ("Mandamus is a remedy that can be used 'to compel a public officer to perform a duty of his office presently due to be performed.'" State ex rel. Marberry v. Macht, 2003 WI 79, ¶27, 262 Wis. 2d 720, 665 N.W.2d 155."); Beres v. City of New Berlin, 34 Wis. 2d 229, 232,

25

148 N.W.2d 653 (1967) ("However, this court has taken the position that a writ of mandamus will issue to enforce the performance of plain imperative duties of a ministerial character imposed on a public body such as a city council."); State v. City of Madison, 170 Wis. 133, 136, 174 N.W. 471 (1919) ("Where there is a plain duty, as here involved, it is a well-recognized and long-established doctrine that compliance therewith may be enforced by mandamus."). The Town on the other hand, says DSG is not entitled to either a declaration of rights or damages because the statutes on which it relies do not create a private cause of action. Neither of these analytical rubrics is capable of properly addressing both of DSG's claims.

¶38 So we must analyze DSG's declaratory judgment claim separately from its claim for damages. After identifying the claimed deficiencies in the new field road, DSG's complaint "demands judgment against the [Town] declaring that the [Town] is obligated to improve and maintain all portions of the park road declared to exist by the Town of Perry Resolution, dated October 17, 2011, to County and Town standards for a Town road." DSG's request for damages, on the other hand, has nothing to do with declaring rights, but concentrates entirely on whether the municipality's failure to comply with a statutory obligation imposes civil liability in favor of a specific party. Therefore, we will address DSG's Town Road Claim as a request for a declaration of rights, and the alternative demand for damages as an assertion of a "private cause of action" against the Town.

1. Declaratory Judgment

26

¶39  A plaintiff may demand a declaration of rights pursuant to Wis. Stat. § 806.04(2), which says:

> Any person . . . whose rights, status or other legal relations are affected by a statute . . . may have determined any question of construction or validity arising under the . . . statute . . . and obtain a declaration of rights, status or other legal relations thereunder.

We said in Tooley v. O'Connell that a declaration of rights is available only if the plaintiff satisfies the following four conditions:

> (1)  There must exist a justiciable controversy that is to say, a controversy in which a claim of right is asserted against one who has an interest in contesting it.
>
> (2)  The controversy must be between persons whose interests are adverse.
>
> (3)  The party seeking declaratory relief must have a legal interest in the controversy that is to say, a legally protectible interest.
>
> (4)  The issue involved in the controversy must be ripe for judicial determination . . . .

77 Wis. 2d 422, 433-34, 253 N.W.2d 335 (quoted source omitted; ellipses in original).

¶40  DSG says we must declare that the Town has a duty to improve the Parkway to town road standards because of the provisions of Wis. Stat. § 82.50(1).  This statutory subsection says that "[t]he following minimum geometric design standards are established for improvements on town roads . . . ."  The balance of the subsection describes the design standards applicable to

27

roads of varying traffic loads. Id.[17] DSG argues that this must assuredly impose on the Town an affirmative obligation with respect to the Parkway because the identified standards are "minimums." If the road falls below this standard, DSG says, it must necessarily violate the statute. And if there is no affirmative obligation to comply with the statute, DSG concludes, there would have been no point in enacting it in the first place.

¶41 We conclude that DSG's Town Road Claim does not satisfy Tooley's first or fourth requirements. That is, DSG does not have a "claim of right" in how the Town chooses to exercise its discretion under the terms of Wis. Stat. § 82.50. And although the Town's exercise of discretion may eventually resolve to a particular course of action, that undecided course of action cannot be ripe for adjudication at this time.

¶42 The same statute establishing the minimum standards for town roads vests in the Town a certain degree of discretion with respect to complying with them. Specifically, it provides that "[t]he department [of transportation] may approve deviations from the minimum standards in special cases where the strict application of the standards is impractical and where such deviation is not contrary to the public interest and safety and the intent of this section." Wis. Stat. § 82.50(2). Before the department can

---

[17] The statute provides different standards for local service roads, roads with intermittent traffic, roads with less than 100 daily cars, roads with 100-250 daily cars, roads with 251-400 daily cars, roads with 401-1000 daily cars, roads with 1001-2400 daily cars, and roads with over 2400 daily cars. See Wis. Stat. § 82.50(1).

28

approve a deviation, of course, there must be a request to deviate. Nothing in the statutes controls the circumstances in which the Town may apply for such a deviation, which indicates the application is left to its discretion. This is consistent with the broader statutory framework relating to town roads, in which the legislature has decreed that "[t]he town board shall have the care and supervision of all highways under the town's jurisdiction . . . ." Wis. Stat. § 82.03(1)(a); see also § 82.03(4) ("The town board shall direct when and where all highway funds shall be expended."). So if the Town can apply to the department of administration for relief from the standards imposed by § 82.50, then compliance with those standards is subject to at least some cognizable amount of discretion. And in the presence of such discretion, declaratory relief is inappropriate because the rights are not yet fixed: "Courts will not declare rights until they have become fixed under an existing state of facts . . . ." Voight v. Walters, 262 Wis. 356, 359, 55 N.W.2d 399 (1952); see also Olson v. Town of Cottage Grove, 2008 WI 51, ¶43, 309 Wis. 2d 365, 749 N.W.2d 211 ("The facts on which the court is asked to make a judgment should not be contingent or uncertain . . . ."); Wis. Stat. § 806.04(6) ("The court may refuse to render or enter a declaratory judgment or decree where such judgment or decree, if rendered or entered, would not terminate the uncertainty or controversy giving rise to the proceeding.").

¶43 Notwithstanding these principles, DSG says, we have previously enforced a town's road-related obligations. Specifically, it refers us to State ex rel. Cabott, Inc. v. Wojcik,

29

47 Wis. 2d 759, 177 N.W.2d 828 (1970), and State ex rel. Wollner v. Schloemer, 200 Wis. 350, 228 N.W. 487 (1930). It says this brace of cases establishes that "Wisconsin law has long recognized that a private cause of action for mandamus may be stated when a town violates clear duties imposed upon it by law with regard to highways and other plain statutory duties."

¶44 But neither Cabott nor Wollner suggests there is a cognizable claim in the way a town exercises its discretionary road-related responsibilities. In Cabott, we addressed a statute that required towns to "keep [highways] passable at all times," and further required that "[w]hen any highway under [the town's] charge becomes impassable [it] shall put the same in passable condition as soon as practicable." Wis. Stat. § 81.03 (1969-70). We said the statutory command to keep the highways passable was "mandatory and unequivocal," even if the manner of making it passable was subject to the town's discretion. Cabott, 47 Wis. 2d at 768. There is no comparable duty under Wis. Stat. § 82.50. The Town's ability to apply for a deviation from the standards contained in that statute mean we cannot consider them "mandatory and unequivocal." Similarly, in Wollner we considered a statute that said "no town board shall discontinue . . . any highway when such discontinuance would deprive the owner of lands of access therefrom to the public highway." 200 Wis. at 352 (quoting Wis. Stat. § 80.02 (1929-30)). The duty not to discontinue in such circumstances was mandatory and unequivocal. The ensuing writ of mandamus commanded the town to reopen the

30

highway, but did not specify the manner of doing so inasmuch as that was left to the town's discretion. Wollner, 200 Wis. at 352.

¶45 Our opinion in State ex rel. Wisniewski v. Rossier, 205 Wis. 634, 238 N.W. 825 (1931), reinforces the lesson that we lack the authority to direct the Town's exercise of its discretionary authority. There, we said the "crucial question . . . [was] whether a town, or its officers, may be compelled by mandamus to repair and maintain a highway in a safe condition." Id. at 635. Referring to our decision in Wollner, we said we "never intended to hold that mandamus may be invoked in this state to compel a town board to repair or to maintain a highway." Id. at 637.

¶46 Although Wisniewski, Cabott, and Wollner addressed the significance of a town's discretion in the context of a writ of mandamus,[18] we think the lesson is no less important in determining whether a person has a "claim of right" in how a town exercises its discretion (the first Tooley prerequisite to a declaration of rights). Although we may review a town's exercise of discretion to ensure it stays within proper parameters, it is not for the judiciary to tell the town how to exercise its discretion in the

---

[18] State ex rel. Althouse v. City of Madison, 79 Wis. 2d 97, 106, 255 N.W.2d 449 (1977) ("[W]hen the action sought to be compelled is discretionary, mandamus will not lie."); State ex rel. Thomas v. State, 55 Wis. 2d 343, 349, 198 N.W.2d 675 (1972) ("[M]andamus will not lie to control the manner in which a governmental body or officer exercises his statutorily-conferred discretion.").

first instance.[19]  Because Wis. Stat. § 82.50 does not impose on the Town a mandatory and non-discretionary obligation to improve the Parkway to town road standards, DSG can have no cognizable claim of right until, at the earliest, the town's discretionary authority resolves to a particular course of action.  And because that has not yet occurred, DSG's Town Road Claim is also not ripe for review.

## 2.  Damages

¶47  There are instances in which private parties may sue public officers for damages based on their failure to comply with statutory obligations.  But as the Town observes, "a private right of action is created only when (1) the language or the form of the statute evinces the legislature's intent to create a private right of action, and (2) the statute establishes private civil liability rather than merely providing for protection of the public." Grube v. Daun, 210 Wis. 2d 681, 689, 563 N.W.2d 523 (1997).  The first element of the analysis focuses on the legislature's intent, which we find in the statute's language.  State ex rel. Kalal v. Circuit Court for Dane Cty., 2004 WI 58, ¶44, 271 Wis. 2d 633, 681 N.W.2d 110 ("We assume that the legislature's intent is expressed in the statutory language.").  The second element reflects the

---

[19] See, e.g., Nowell v. City of Wausau, 2013 WI 88, ¶24, 351 Wis. 2d 1, 838 N.W.2d 852 ("Thus, the scope of certiorari review is limited to:  (1) whether the [municipality] kept within its jurisdiction; (2) whether it acted according to law; (3) whether its action was arbitrary, oppressive or unreasonable and represented its will and not its judgment; and (4) whether the evidence was such that it might reasonably make the order or determination in question." (alteration in original)).

general rule "'that a statute which does not purport to establish a civil liability, but merely makes provision to secure the safety or welfare of the public as an entity, is not subject to a construction establishing a civil liability.'" McNeill v. Jacobson, 55 Wis. 2d 254, 259, 198 N.W.2d 611 (1972). Nor will a cause of action "be implied to protect an interest other than the one specifically protected by the statute." Id.

¶48 DSG says "Wisconsin law, has long recognized that a private cause of action . . . may be stated when a town violates clear duties imposed upon it by law with regard to highways[.]" But the balance of its argument makes it clear that it was addressing not a right to seek damages, but its ability to seek relief in the form of a declaration of rights or writ of mandamus (which we addressed above). Nothing in its briefs describes how we could understand Wis. Stat. §§ 82.03 or 82.50 as making the Town answerable to DSG in damages for failure to improve the Parkway to town road standards.

¶49 Our review of these statutes confirms that it contains no language evidencing a "clear expression of intent to create a private right of action" for a town's failure to comply with its standards. Kranzush v. Badger State Mut. Cas. Co., 103 Wis. 2d 56, 81, 307 N.W.2d 256 (1981). Nor does any provision in the statutes suggest its terms exist to protect a private interest rather than "providing for protection of the public." Grube, 210 Wis. 2d at 689. We conclude that Wis. Stat. § 82.50(1) does not create a private cause of action.

33

IV.    CONCLUSION

¶50  We hold that neither the Right-to-Take Case nor the Just Compensation Case bars DSG's claims in this case.  However, we also hold that Wis. Stat. § 82.50(1) does not impose road-building obligations on the Town that are susceptible to a declaration of rights, nor does it create a private cause of action by which DSG can recover damages for the failure to improve the Parkway to town road standards.  Therefore, we reverse the decision of the court of appeals and remand to the circuit court for further proceedings on the Petition Standards Claim.

*By the Court.*—The decision of the court of appeals is reversed and the cause is remanded to the circuit court for further proceedings consistent with this opinion.